TIMOTHY A. SCOTT (SBN 215074)
MICHELLE C. ANGELES (SBN 298883)
McKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 202-7461
Email: tscott@mckenziescott.com
       mangeles@mckenziescott.com

Attorneys for Plaintiff

## U.S. DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NAHAL CONNIE DADKHAH BY AND THROUGH HER SUCCESSOR-IN-INTEREST MANOUCHEHR DADKHAH, INDIVIDUALLY AND IN HIS CAPACITY AS SUCCESSOR-IN-INTEREST;<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; SDPD CHIEF DAVID NISLEIT; SDPD OFFICERS DOES 1-10; SDPD EMPLOYEES DOES 1-5; SDPD OFFICER SUPERVISORS DOES 1-6<br>        Defendants. | Case No.: **'24CV0097 RBM DDL**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>1. **42 U.S.C. § 1983: Fourteenth Amendment, State-Created Danger (*Monell*)**<br>2. **42 U.S.C. § 1983: Fourteenth Amendment, Due Process**<br>3. **42 U.S.C. § 1983: Fourteenth Amendment, Due Process, State-Created Danger**<br>4. **Negligence**<br>5. **Bane Act**<br><br>**DEMAND FOR JURY TRIAL.** |

COMPLAINT

# INTRODUCTION

1. Nahal Connie Dadkhah ("Connie"), was murdered at the age of 45 years old by a man SDPD knew was Connie's stalker and abuser. Her murder was entirely preventable. Her family brings this lawsuit because Defendants failed to perform their basic function in our community, because their actions and inactions increased the danger to Connie specifically, and because Defendants share legal responsibility for her death under federal law.



2. Connie was a medical research assistant and production manager. She was kindhearted, vibrant, caring, and empathetic. She was a compassionate woman who loved animals, sewing, and in her free time volunteered at a local mental health outreach center.

3. On the evening of June 14, 2022, beginning at approximately 7:00 p.m., Connie's neighbors called 911 to report an agitated man carrying a bottle, yelling, and banging on Connie's door.

4. Approximately an hour later, neighbors called 911 to report the man had broken into Connie's residence through a glass door.

5. A neighbor reported the sound of a fight inside.

6. Dispatch upgraded the priority of the call.

7. Neighbors and other third parties believed and relied upon the police department and dispatch's representations that help was on the way and did not try to intervene.

8. SDPD Officers did not arrive until 8:47 pm—nearly two hours after the initial calls and nearly an hour after the reported break-in and physical violence.

COMPLAINT

9. Neighbors and third parties believed that police would resolve the situation and help Connie and again did not intervene.

10. Upon arrival, SDPD Police Officers saw the broken glass and knocked on Connie's door.

11. When no one answered the door, SDPD Police Officers called Connie's phone, but were unable to make contact.

12. Instead of entering Connie's residence to ensure Connie was safe, SDPD Police Officers left the scene.

13. The following morning, the man who had broken into Connie's residence left the residence and told a neighbor to call the police because Connie was dead inside.

14. Police then found Connie dead in her residence.

15. The Defendants gravely mishandled the situation that led to Connie's murder.

16. The Defendants failed to timely respond to multiple calls for help.

17. The Defendants created a dangerous situation by ensuring concerned neighbors and citizens that they would respond and lulling neighbors and citizens into relying upon those representations.

18. The Defendants created a dangerous situation by failing to respond in a timely and effective manner.

19. The Defendants created a dangerous situation by failing to ensure that Connie was okay once they responded to the scene.

20. Connie's death was entirely preventable had SDPD responded in a reasonable time and manner, but SDPD failed to do so.

21. Upon information and belief, SDPD's policies and procedures are insufficient to have addressed this foreseeable and preventable harm, and/or their

training of its officers to prevent the negligence and constitutional violations that occurred here was deficient.

22. Plaintiff Manouchehr Dadkhah, individually and in his capacity as successor-in-interest (hereinafter "Plaintiff"), sues to seek justice and recover damages arising from the failures of the Defendants that resulted in the murder of his daughter Connie.

23. Plaintiff requests a jury trial to pursue justice on these claims.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff assert causes of action for constitutional violations arising under 42 U.S.C. § 1983.

25. The Court has supplemental jurisdiction over Plaintiff' state law claims pursuant to 28 U.S.C. § 1367. In accordance with the requirements of the California Tort Claims Act (Cal. Gov. Code §§ 810-996.6), Plaintiff filed a timely tort claim against the City of San Diego and its employees under Cal. Gov. Code § 900.4 on December 12, 2022. Defendants mailed Plaintiff a notice of rejection of claim on July 14, 2023.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arise out of events and omissions occurring in the City of San Diego, which is situated in the Southern District of California.

## PARTIES

27. Nahal Connie Dadkhah ("Connie") was, at all times relevant to this lawsuit, a resident of the State of California, County of San Diego.

28. Manouchehr Dadkhah is the father of decedent Nahal Connie Dadkhah. In addition to suing individually for personal damages arising from losing his daughter, Plaintiff sues as Connie's successor-in-interest to prosecute all claims

surviving Connie's death pursuant to Cal. Civ. Code § 377.30. *See* Exhibit A, Declaration by Manouchehr Dadkhah; Exhibit B, Death Certificate.

29. Defendant City of San Diego (hereinafter "the CITY") is a governmental entity organized and existing under the laws of the State of California. The San Diego Police Department (hereinafter "SDPD") is organized under, and part of, the City of San Diego.

30. Defendant SDPD Chief Nisleit at all times relevant herein, was the Chief of Police for the City of San Diego, and, as such, a final policymaker and its decisionmaker who is sued herein in his official and individual capacities.[1]

31. Defendant Officer Does 1-10 are all SDPD Officers who responded to the scene of the disturbance and were responsible for ensuring Connie's safety on June 14, 2022.

32. Defendant Officer Does 1-10 will hereinafter be referred to collectively as "Doe Officers" unless otherwise noted. Doe Officers were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

33. Defendant Employees Does 1-5 are all SDPD Employees who were responsible for providing accurate and thorough information to the Doe Officers to aid in their response on June 14, 2022, and ensure the safety of Connie. On information and belief, this would include the dispatch unit.

34. Defendant Employee Does 1-5 will hereinafter be referred to collectively as "Doe Employees" unless otherwise noted. Doe Employees were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

35. Defendant Officer Supervisor Does 1-6 (hereinafter "Doe Officer Supervisors") are SDPD officers who were responsible for training and supervising Doe Officers. Doe Officer Supervisors were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

36. Doe Officers, Doe Officer Supervisors, and Doe Employees are sued in their individual capacities for the purposes of claims arising under § 1983 and as County employees for the purposes of claims arising under state law.

37. Plaintiff is ignorant of the true names of all Doe Officers, Doe Officers Supervisors, and Doe Employees despite due diligence and will amend the Complaint to add their true names upon learning them.

## FACTUAL ALLEGATIONS

38. Connie resided in a unit on the second floor of a two-story condominium building located in the Rancho Penasquitos community at 9322 Twin Trails Drive #22, San Diego, CA 92129.

39. On June 14, 2022, at approximately 4:00 p.m., Connie's neighbors observed an agitated man, Parrish Chambers, on the stairs outside of Connie's unit. Chambers was yelling and rambling. Neighbors recognized Chambers from prior incidents.

40. Neighbors continued to observe Chambers outside for hours angry, yelling aggressively, and appearing highly agitated.

41. At approximately 7:00 p.m. at least two of Connie's neighbors called the police and reported to Doe Employees that Chambers was banging on Connie's door and screaming. On information and belief, no officers were dispatched.

42. The neighbors who called police did not act further because dispatch told them that help was on the way.

43. Approximately additional five calls were made to police warning Doe Employees about Chambers outside of Connie's apartment from approximately 7:00 p.m.- 8:00 p.m.. On information and belief, no officers were dispatched.

44. At approximately 7:53 p.m., a neighbor heard a man climb onto Connie's balcony and break through her glass door. The neighbor saw broken glass on the floor and saw a man enter Connie's unit.

45. At approximately 8:00 p.m. at least one other neighbor called the police again and told Doe Employees she was extremely concerned about Connie's safety and what was going on in her apartment.

46. Yet another neighbor called the police and told Doe Employees that she observed an active burglary happening in her neighbor's unit. She told a Doe Employee she was looking through her window and observed a man enter through second story sliding glass door and that he busted the door. While on the phone with a Doe Employee she heard a physical fight and told the dispatcher that she thought he was going to kill Connie.

47. Doe Employees upgraded the call to a high priority.

48. At approximately 8:51 p.m. Doe Officers showed up and with guns drawn knocked on Connie's door.  Doe Officers called out on a microphone for individuals in Connie's apartment to come out.

49. The uniformed and armed officers, their patrol cars, and their amplified public announcements all communicated to neighbors that police were on the scene, that they should stay inside their apartments, and that neighbors should not enter the apartment themselves to try to save Connie.

50. In short, neighbors believed that they police were there to help Connie.

51. The neighbor that lived in the apartment below Connie told at least one Doe Officer that Connie was home and that a man had broken into the apartment and showed the Doe Officer the broken glass. On information and belief, she told

1  officers that she had seen first-hand this same man, Chambers assault Connie on previous occasions.

52. Doe Officers called Connie on her phone received no answer and left.

53. On information and belief Doe Officers were outside of Connie's apartment for approximately 15 minutes before leaving.

54. On the morning of June 15, 2022, Doe Officers returned to Connie's apartment after they received a call from a neighbor who was told by Chambers to call the police because Connie was dead. Doe Officers found Connie dead in her apartment.

55. Connie's death was preventable.

56. The Defendants created a dangerous situation by failing to respond in a timely and effective manner.

57. The Defendants created a dangerous situation by assuring concerned neighbors and citizens that they would respond and lulling neighbors and citizens into relying upon those representations.

58. The Defendants created a dangerous situation by preventing concerned neighbors and citizens from entering Connie's apartment and preventing them from trying to save her or render aid to her themselves.

59. The Defendants created a dangerous situation by failing to ensure that Connie was okay once they responded to the scene.

60. On information and belief Doe Officers and Doe Employees had actual or constructive possession of information that over the past two years the police had responded to several incidents at Connie's apartment that showed that Chambers had prior instances of violence and had stalked and abused Connie in the past.

61. On information and belief Doe Officers and Doe Employees had actual or constructive possession of information of a prior incident that occurred on

November 2, 2021, where Chambers reportedly dragged Connie by her hair into her SUV and drove away.

62. On information and belief Doe Officers and Doe Employees had actual or constructive possession of information of a prior incident that occurred on April 22, 2022, where Chambers showed up to Connie's apartment, was yelling at Connie, grabbing, pulling, and punched her. It indicated that Connie was visibly injured and confirmed that Chambers did not live with Connie.

63. On information and belief, Doe Officers and Doe Employees had actual or constructive possession of notes from the April 22, 2022, incident instructing officers to send at least three officers, a sergeant, and a K-9 unit if a call for service is made for Connie's address.

64. On information and belief Doe Officers and Doe Employees had actual or constructive possession of information that showed Chambers had a criminal record and had been ordered by a Judge to stay away from Connie as a condition of his probation.

65. Doe Officers and Doe Employees had a duty to protect Connie and they failed to do so.

66. According to the San Diego Police Department Communications Division Priority System, priority one calls, like Connie's, should be "dispatch[ed] immediately."[2]

67. Priority one calls involve serious crimes in progress or a threat to life, including missing children, child abuse, domestic violence, disturbances involving weapons/violence and bomb threats.

---

[2] San Diego Police Department Communications Division Priority System, available at https://seshat.datasd.org/pd/pd_cfs_priority_defs_datasd.pdf, (last accessed 1/11/2024)

68. For the past five years SDPD has failed to meet their public safety standards and key performance indicators for priority one calls.[3]

69. In 2022, SDPD and the City's average response time target for priority one calls was 14 minutes. SDPD's actual average response time was 36.8 minutes, more than double their target.[4]

70. Defendant Chief Nisleit acknowledged SDPD deficiencies in a memorandum issued two months after Connie's murder.[5]

71. Despite knowledge of the danger longer response times create, the City, Chief Nisleit, Doe Officer Supervisors had insufficient and ineffectual policies, procedures, training, and supervision in place to have addressed this foreseeable and preventable harm, and/or their training of its officers to prevent the negligence and constitutional violations that occurred here was deficient.

72. Despite actual and constructive knowledge of the risks posed by stalkers abusers like Parrish, the City, Chief Nisleit, Doe Officer Supervisors had insufficient and ineffectual policies, procedures, communication, training, and supervision in place to ensure victims like Connie are protected from their abusers.

/ / /

/ / /

/ / /

---

[3] Data can be found on the City of San Diego website, Fiscal Year 2018-2023 Adopted Budgets pages available at https://www.sandiego.gov/finance/annual/fy23

[4] City San Diego Fiscal Year 2023 Adopted Budget, available at https://www.sandiego.gov/sites/default/files/fy23ab_v2police.pdf (last accessed 1/11/2024)

[5] Chief Nisliet wrote in an August 8, 2022 memorandum, "[I]ts widely known that responses times to lower priority calls for service are rising exponentially and failing to meet public safety expectations," available at https://s3.documentcloud.org/documents/23719495/memo-sdpd-operations-update-080822-final.pdf (last accessed 1/11/2024).

# I.

# FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983: Fourteenth Amendment, State-Created Danger (*Monell*)

### (vs. City of San Diego, Chief Nisleit, Supervisor Does)

73. Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

74. Plaintiffs allege this cause of action against the City of San Diego, Chief Nisleit, and the Supervisor Does under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

75. Defendants in this cause of action were government actors acting under color of law for purposes of this cause of action and were also final policymaking officials for purposes of *Monell*.

76. Connie had a constitutional right be free from state-created danger. *See e.g. Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023). This doctrine applies and subjects a governmental entity to liability "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Id.* at 1106.

77. That is, she had the right not to be placed in a position of actual, particularized danger, and/or to have a situation of actual, particularized danger made *more* dangerous than the position than she already faced, by virtue of the affirmative acts and deliberate omissions of government agents.

78. The Defendants collectively committed affirmative acts, as well as deliberate failures to act, placing Connie in particularized danger at the hands of her stalker, who Defendants knew to be more likely to attempt to stalk, harm, or kill Connie due documented and repeated instances of violence, verbal and physical abuse and harassment. Yet Defendants failed to protect her. These things could only occur because of years of faulty procedures, practices, and an absence

of supervision that amounted to a disregard for the constitutional rights of people like Connie Dadkhah.

79. The Defendants acted with deliberate indifference and both objective and subjective knowledge and disregard of the known and obvious dangers posed by Parrish and abusers like him.

80. The Defendants disregarded known and obvious consequences of their actions and omissions, knowing of and ignoring the risk to Connie and nevertheless exposing Connie to those risks.

81. The affirmative acts and omissions described in this complaint and to be proven at trial created the actual particularized danger that caused injury to Connie, and ultimately proximately caused her death.

82. Defendants by and through its officials and employees, placed Ms. Dadkhah (and other similarly situated victims) in particularized risk by adopting and acting in accordance with official policies and procedures, and permitting widespread and longstanding practices and customs, that ultimately gave rise to and caused Ms. Dadkhah's death.

83. The Defendants placed Connie (and other similarly situated victims) in particularized risk by intentional decisions and omissions, that ultimately gave rise to and caused Connie's death, including but not limited to:

   A. Doe Employees failing to dispatch police officers immediately when multiple calls are made about a known and dangerous individual.
   B. Doe Employees failing to dispatch police officers immediately when there are documented prior instances of violence at the same location involving the same abuser and victim.
   C. Doe Officers failing to respond to a call in a timely manner and in accordance with the City's and SDPD's public safety standards and key

performance indicators when there is known and documented instances of violence at the same location involving the same abuser and victim.

D. Doe Employees and Doe Officers failing to communicate available information of prior instances of violence and abuse.

E. Doe Employees and Doe Officers ignoring and/or failing to respond in accordance with available information of prior instances/reports of violence and abuse.

F. Doe Officers ignoring the obvious and known dangers expressed by witnesses such as the broken glass and prior instanced of abuse and violence and failing to respond to in an effective manner and ensuring that Connie was safe.

84. Defendants' intentional decisions and omissions put Connie at substantial risk of suffering serious harm.

85. Defendants did not take reasonable available measures to abate or reduce the known and obvious danger, even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved—making the consequences of the defendants' conduct obvious.

86. Defendants acted through and are liable by virtue of their final policymakers, and/or subordinates who had been delegated final policymaking authority.

87. Defendants also maintained a policy of failing to train and supervise its employees and agents to prevent violations of the law and prevent the kind of harm that befell Connie.

88. Defendants failed to train and supervise employees and agents to avoid the kind of harm that befell Connie.

89. Defendants knew or should have known that employees and agents' acts and omissions, put abused women like Connie at risk.

90. Defendants nevertheless failed to adequately supervise and train their employees and agents, causing and helping to cause the harm that befell Connie.

## II.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process

## (vs. Officer Does, Employee Does.)

91. Plaintiff alleges and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

92. Plaintiff Manouchehr Dadkhah, as an individual, alleges this Fourteenth Amendment substantive due process claim against Defendants for depriving him of his righ to companionship and society with his daughter, Connie.

93. That is, he had the right not to have his daughter placed in a position of actual, particularized danger, and/or a situation of actual, particularized danger more dangerous than the position than she already faced, and to have her life taken, by virtue of the affirmative acts and deliberate omissions of government agents.

94. Defendants acted with deliberate indifference and both objective and subjective knowledge and disregard of the known and obvious dangers posed by Parrish.

95. Defendants disregarded known and obvious consequences of their actions and omissions, knowing of and ignoring the risks to Connie and nevertheless exposing Connie to those risks.

96. The affirmative acts and omissions described in this complaint and to be proven at trial created the actual particularized danger that caused injury to Connie, and ultimately proximately caused her death.

97. Plaintiff specifically incorporate by reference here, as alleged in the above cause of action, the myriad ways in which Defendants made intentional decisions and omissions regarding Connie's safety.

98. Defendants' deliberate indifference was an actual and proximate cause of Plaintiff' economic and non-economic damages, loss of love, companionship, society, comfort, care, assistance, protection, and moral support.

## III.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process, State-Created Danger**

**(vs. Officer Does, Employee Does)**

99. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs. \

100. As set forth above, Connie had a constitutional right to be free from state-created danger. *See e.g. Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023). This doctrine applies and subjects a governmental entity to liability "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Id.* at 1106.

101. That is, she had the right not to be placed in a position of actual, particularized danger, and/or to have a situation of actual, particularized danger made *more* dangerous than the position than she already faced, by virtue of the affirmative acts and deliberate omissions of the individual Defendants.

102. Individual Defendants, including Doe Officers and Doe Employees, collectively committed affirmative acts, as well as deliberate failures to act, placing Connie in particularized danger at the hands of her stalker, who Defendants knew to be more likely to attempt to stalk, harm, or kill Connie due documented and repeated instances of violence, verbal and physical abuse and harassment. Yet Defendants failed to protect her.

/ / /

/ / /

103. The Defendants acted with deliberate indifference and both objective and subjective knowledge and disregard of the known and obvious dangers posed by Parrish and abusers like him.

104. The Defendants disregarded known and obvious consequences of their actions and omissions, knowing of and ignoring the risk to Connie and nevertheless exposing Connie to those risks.

105. The affirmative acts and omissions described in this complaint and to be proven at trial created the actual particularized danger that caused injury to Connie, and ultimately proximately caused her death.

## IV.

## FOURTH CAUSE OF ACTION

### Negligence

### (By Plaintiff as Successor-in-Interest Against All Defendants)

106. Plaintiff alleges and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

107. Plaintiff alleges this claim as successor in interest pursuant to Cal. Civ. Proc. § 377.30.

108. Doe Officers and Doe Employees had a duty to use reasonable care regarding members of the public and thus had a duty to use reasonable care to protect Connie from foreseeable harm from Parrish. Doe Officers and Doe Employees breached their duties of care and caused harm to Plaintiff.

109. Chief Nisleit Doe Supervisors and the City breached their duty of care in negligently supervising and training Doe Officers and Doe Employees, and negligently maintaining dangerous and unconstitutional policies and procedures and customs as described herein.

110. As a direct, proximate, and foreseeable result of the breach of Defendants' duties of care, Plaintiff suffered general and specific damages.

111. Pursuant to Cal. Gov. Code § 815.2, the City is vicariously liable for the actions and/or omissions of its employees, officers, within the scope of their employment.

## V.

## FIFTH CAUSE OF ACTION

### Bane Act

**(By Plaintiff as Successor-in-Interest Against Doe Employees, Doe Officers the City)**

112. Plaintiff alleges all prior paragraphs and incorporates the same herein by reference.

113. Plaintiff alleges this claim as successor in interest pursuant to Cal. Civ. Proc. § 377.30.

114. As alleged above, Connie had a constitutional right to be free from state-created danger. Defendants acts and omission placed Connie in a position of actual, particularized danger, and/or a situation of actual, particularized danger more dangerous than the position than she already faced. Defendants' due process violations are sufficient in and of themselves to constitute violations of the Bane Act.

115. The California Legislature has declared that it is a violation of state civil rights act for any person to interfere with the exercise or enjoyment by any individual of his rights secured by the United States Constitution or state or federal law.

116. Connie had a Fourteenth Amendment right to not be denied "liberty, or property, without due process of law" as well as a right to "equal protection of the laws."

117. As alleged above, Defendants knowingly deprived Connie of constitutionally protected rights through inherently dangerous acts and omissions.

118. Plaintiff seek compensatory damages including for the pain and suffering Connie was subjected to prior to her death pursuant to Cal. Civ. Proc. § 377.34(b).

119. Pursuant to Cal. Gov. Code § 815.2, the City is vicariously liable for the actions and/or omissions of its employees, officers, within the scope of their employment.

## PRAYER FOR RELIEF

Plaintiff pray for judgment against Defendants as follows:

1. General and compensatory damages in an amount according to proof;
2. Punitive and exemplary damages;
3. Civil penalties as provided by law;
4. Wrongful death damages under California Code of Civil Procedure 377.60;
5. Attorneys' fees and costs of suit;
6. And for such other and further relief as the Court may deem proper.

Dated: January 12, 2024

Respectfully submitted,

*s/Timothy A. Scott*
TIMOTHY A. SCOTT
McKENZIE SCOTT PC
MICHELLE C. ANGELES
McKENZIE SCOTT PC
Attorneys for Plaintiff

COMPLAINT