MARA W. ELLIOTT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
JACQUELINE J. MCQUARRIE, Chief Deputy City Attorney
California State Bar No. 267319
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:  (619) 533-5856

Attorneys for Defendants, CITY OF SAN DIEGO and
SDPD CHIEF DAVID NISLEIT

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NAHAL CONNIE DADKHAH BY AND THROUGH HER SUCCESSOR-IN-INTEREST MANOUCHEHR DADKHAH, INDIVIDUALLY AND IN HIS CAPACITY AS SUCCESSOR-IN-INTEREST,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF SAN DIEGO; SDPD CHIEF DAVID NISLEIT; SDPD OFFICERS DOES 1-10; SDPD EMPLOYEES DOES 1-5; SDPD OFFICER SUPERVISORS DOES 1-6,<br><br>        Defendants. | Case No.  3:24-cv-00097-RBM-DDL<br><br>**DEFENDANT CITY OF SAN DIEGO'S AND CHIEF DAVID NISLEIT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>Date:  April 22, 2024<br>Judge:  Hon. Ruth Bermudez Montenegro<br>Court Room:  5B<br>Trial:  Not Set |

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ............................................................ 2

III. AUTHORITY FOR MOTION ........................................................................ 3

IV. PLAINTIFF FAILS TO PLEAD SUFFICIENT FACTS TO ESTABLISH A
    CLAIM FOR RELIEF UNDER *MONELL* ..................................................... 4

   A. Plaintiff Estate Cannot Establish A *Monell* Claim Because There Was No
      Constitutional Violation ....................................................................... 5

      1. Defendant Doe Employees' and Doe Officers' Affirmative Actions
         did not Expose Decedent to An Actual, Particularized Danger . 6

      2. Defendant Doe Employees and Doe Officers Did Not Display
         Deliberate Indifference ................................................................. 9

   B. Plaintiff Estate Did Not Sufficiently Plead a *Monell* Claim Based on an
      Official Policy or Custom ................................................................... 10

   C. Plaintiff Did Not Sufficiently Plead a *Monell* Claim Based on a Failure to
      Train ................................................................................................. 12

   D. The Court Should Dismiss All Claims Against Chief Nisleit as Redundant
      13

V. PLAINTIFF ESTATE FAILS TO ALLEGE SUFFICIENT FACTS TO STATE
   A NEGLIGENCE CLAIM .......................................................................... 13

   A. Plaintiff's Negligence Claim Against the City Fails .............................. 13

      1. The Doe Defendants Had No Duty to Decedent ........................... 14

      2. Plaintiff Failed to Plead Any Facts to Support Gross Negligence
         Against Doe Employees .............................................................. 17

   B. Plaintiff's Negligence Claim Against Chief Nisleit Fails ....................... 17

VI. PLAINTIFF ESTATE'S BANE ACT CLAIM AGAINST THE CITY FAILS 18

VII. DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER CALIFORNIA
    STATE LAW .......................................................................................... 19

   A. Does and the City Cannot Be Liable for the Police Department's
      Discretionary Resource Allocations or Decision to Leave the Scene 19

   B. Does and the City Cannot Be Liable for Failure to Provide Police
      Protection ......................................................................................... 21

   C. Does and the City Cannot Be Liable for the Failure to Enforce a Law ... 22

VIII. CONCLUSION ...................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. City of Fremont*
  68 Cal. App. 4th 243 (1998).................................................................15, 16

*AE ex rel. Hernandez v. Cnty. of Tulare*
  666 F.3d 631 (9th Cir. 2012)...............................................................4

*Antique Arts Corp. v. City of Torrance*
  39 Cal. App. 3d 588 (1974)................................................................19

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)...........................................................................3, 4

*Benavidez v. San Jose Police Dept.*
  71 Cal. App. 4th 853 (1999)...............................................................14

*Board of Comm'rs of Bryan Cnty. v. Brown*
  520 U.S. 397 (1997)...........................................................................12

*Brandon v. Holt*
  469 U.S. 464 (1985)...........................................................................13

*Broam v. Bogan*
  320 F.3d 1023 (9th Cir. 2003)............................................................4

*Brown v. USA Taekwondo*
  11 Cal. 5th 204 (2021).......................................................................15

*Bryan Cnty. v. Brown*
  520 U.S. 397 (1997)...........................................................................9

*C.A. v. Williams S. Hart Union High Sch. Dist.*
  53 Cal. 4th 861 (2012).......................................................................18

*City of Canton v. Harris*
  489 U.S. 378 (1989)...........................................................................11, 12

*City of Los Angeles v. Heller*
  475 U.S. 796 (1986)...........................................................................5

*City of Santa Barbara v. Superior Court*
  41 Cal. 4th 747 (2007).......................................................................17

*City of Santee v. Cnty. of San Diego*
  211 Cal. App. 3d 1006 (1989)...........................................................16

*Connick v. Thompson*
  563 U.S. 51 (2011).............................................................................10, 12

*Conway v. Cnty. of Tuolumne*
  231 Cal. App. 4th 1005 (2014)...........................................................19

*Cornell v. City & Cnty. of San Francisco*
  17 Cal. App. 5th 755 (2017)...............................................................18

*Cortez v. City of Los Angeles*
  294 F.3d 1186 (9th Cir. 2002)............................................................11

*De La Cruz v. Tormey*
  582 F.2d 45 (9th Cir. 1978)................................................................3

*DeShaney v. Winnebago County Dept. of Social Services*
  489 U.S. 189 (1989)...........................................................................1, 5, 6

*Dutton v. City of Pacifica*
  35 Cal. App. 4th 1171 (1995).............................................................14

*Eastburn v. Reg'l Fire Prot. Auth.*
  31 Cal. 4th 1175 (2003).....................................................................17

*Estate of Amos ex rel. Amos v. City of Page*
  257 F.3d 1086 (9th Cir. 2001)............................................................7

*Flores v. Cnty. of Los Angeles*
   758 F.3d 1154 (9th Cir. 2014) ................................................................. 12

*Gazette v. City of Pontiac*
   41 F.3d 1061 (6th Cir. 1994) ..................................................................... 9

*Gillette v. Delmore*
   979 F.2d 1342 (9th Cir. 1992) ................................................................. 11

*Golick v. State*
   82 Cal. App. 5th 1127 (2022) ................................................................. 16

*Greenwood v. City of Los Angeles*
   89 Cal. App. 5th 851 (2023) .................................................................... 19

*Hartzler v. City of San Jose*
   46 Cal. App. 3d (1975) ............................................................................ 22

*Hayes v. Cnty. of San Diego*
   57 Cal.4th 622 (2013) .............................................................................. 13

*Herrera v. L.A. Unified Sch. Dist.*
   18 F.4th 1156 (9th Cir. 2021) .................................................................... 9

*Ivey v. Bd. of Regents of Univ. of Alaska*
   673 F.2d 266 (9th Cir. 1982) ..................................................................... 4

*Jackson v. Barnes*
   290 F.3d 755 (9th Cir. 2014) ................................................................... 12

*Jamison v. Storm*
   426 F. Supp. 2d 1144 (W.D. Wash. 2006) ................................................ 7

*Johnson v. City of Philadelphia*
   975 F.3d 394 (3rd Cir. 2020) ..................................................................... 6

*Johnson v. State of California*
   69 Cal. 2d 782 (1968) .............................................................................. 20

*Kendrick v. Cnty. of San Diego*
   2018 WL 1316618, at *10-11 (S.D. Cal. Mar. 14, 2018) ...................... 18

*Kennedy v. City of Ridgefield*
   439 F.3d 1055 (9th Cir. 2006) ................................................................... 6

*L.W. v. Grubbs*
   92 F.3d 894 (9th Cir. 1996) ................................................................... 6, 9

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) ................................................................... 20

*M.B. v. City of San Diego*
   233 Cal. App.3 d 699 (1991) .............................................................. 15, 16

*Martinez v. City of Clovis*
   943 F.3d 1260 (9th Cir. 2019) ................................................................... 6

*McCorkle v. City of Los Angeles*
   70 Cal. 2d 252 (1969) .............................................................................. 21

*Michenfelder v. City of Torrance*
   28 Cal. App. 3d (1972) ............................................................................ 21

*Minch v. Dep't of California Highway Patrol*
   140 Cal. App. 4th 895 (2006) ................................................................. 16

*Monell v. Dep't of Social Servs.*
   436 U.S. 658 (1978) ........................................................................ 4, 11, 12

*Morgan v. Gonzales*
   495 F.3d 1084 (9th Cir. 2007) ................................................................... 5

*Munger v. City of Glasgow Police Dep't*
   227 F.3d 1082 (9th Cir. 2000) ................................................................... 5

*Murgia v. Langdon*
   61 F.4th 1096 (9th Cir. 2023) .................................................................... 6

*Patel v. Kent Sch. Dist.*
   648 F.3d 965 (9th Cir. 2011) ............................................................. 5, 6, 9

*Pierce v. Springfield Township*
   2013 WL 12099085 (S.D. Ohio 2013) ...................................................... 7

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*
  130 F.3d 432 (9th Cir. 1997) ................................................................. 10
*Reese v. City of Sacramento*
  888 F.3d 1030 (9th Cir. 2018) .............................................................. 18
*Simmons v. Superior Court*
  7 Cal. App. 4th 1113 (2016) ................................................................ 18
*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ............................................................... 4
*Susman v. City of Los Angeles*
  269 Cal. App. 2d 803 (1969) ............................................................... 22
*Von Batsch v. Am. Dist. Telegraph Co.*
  175 Cal App. 3d 1111 (1985) .............................................................. 14
*Williams v. State of California*
  34 Cal. 3d 18 (1983) ................................................................... 14, 15
*Zelig v. Cnty. of Los Angeles*
  27 Cal. 4th 1112 (2002) .............................................................. 14, 22

## Statutes

42 U.S.C. § 1983 ................................................................... 4, 13

Cal. Gov't Code § 818.2 ............................................................. 22
Cal. Gov't Code § 815.2(a) ........................................................ 13
Cal. Gov't Code § 815.2(b) ........................................................ 19
Cal. Gov't Code § 820.2 ............................................................. 19
Cal. Gov't Code § 821 ............................................................... 22
Cal. Gov't Code § 845 ....................................................... 19, 21, 22
Cal. Gov't Code § 846 .......................................................... 19, 22
Cal. Gov't Code § 845 ............................................................... 22

Fed. R Civ. P 12(b)(6) .............................................................. 3, 4

Health & Saf. Code, § 1799.107(b) ................................................ 17

## Other Authorities

Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 845, p. 452 ........... 22

## I.    INTRODUCTION

"[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989). Plaintiff, Manouchehr Dadkhah (Plaintiff Dadkhah), the father of Decedent Nahal Connie Dadkhah, sues the City of San Diego, San Diego Police Chief David Nisleit, and Doe employees of the San Diego Police Department on behalf of himself and Decedent's Estate (Plaintiff Estate) for alleged civil rights and state law violations related to his daughter's death on June 14, 2022. Although the murder of Decedent is tragic, the Defendants are not legally responsible for her death.

At its core, this case involves the divide between the community's perception of the moral obligation of police officers following a tragic incident and the officer's legal duties. Today more than ever, officers are required to make tough decisions in the face of civil liability and even criminal prosecution. In this instance, officers responded to calls about an agitated, rambling, and aggressive man from Decedent's neighbors. When officers arrived, they attempted to contact those inside Decedent's apartment by knocking on the door and making call outs on a microphone. They spoke with neighbors, and even called Decedent's phone. After fifteen minutes, based on the information they knew at the time, officers left the scene. In making that decision, officers had to weigh competing interests of violating Decedent's Fourth Amendment rights by making a warrantless entry and the potential for a violent confrontation with a mentally ill man. The question is not whether, in hindsight, the officers could have acted differently, but whether the officers had a *legal obligation* to act differently. They did not.

There is no liability based on a failure to provide police protection or failure to protect a victim from the criminal acts of a third party, absent limited exceptions. Plaintiffs fail to establish liability on behalf of the City of San Diego or Chief Nisleit and fail to plead facts to establish any constitutional violation. Additionally,

Plaintiff Estate's negligence claim fails based on a lack of duty, and Plaintiff Estate fails to plead facts establishing a Bane Act claim. Plaintiff's state law claims are also barred by multiple statutory immunities. The Court should dismiss the Complaint without leave to amend.

## II.      STATEMENT OF RELEVANT FACTS

This case results from the tragic murder of Decedent Nehal Dadkhah (Decedent) allegedly at the hands of Parrish Chambers on or about June 14, 2022. (ECF No. 1, ¶¶ 39, 54.) The criminal prosecution of Chambers is ongoing. The Complaint outlines prior incidents of violence by Chambers against Decedent on November 2, 2021, and April 22, 2022. (ECF No. 1, ¶¶ 61-62.)

At approximately 7:00 p.m. on June 14, 2022, at least two neighbors called police and reported to Doe Employees Chambers was banging on Decedent's door and screaming. (ECF No. 1, ¶ 41.) Between 7:00 p.m. and 8:00 p.m., approximately five additional calls were made to police warning the Doe Employees about Chambers being outside of Decedent's apartment. (ECF No. 1, ¶ 43.) At approximately 8:00 p.m., at least one neighbor called police again and told Doe Employees she was extremely concerned about Decedent's safety. (ECF No. 1, ¶ 45.) Another neighbor called and told Doe Employees that she observed an active burglary wherein she observed a man enter through a second story sliding glass door, heard a physical fight, and told the dispatcher that she thought he was going to kill Decedent. (ECF No. 1, ¶ 46.) Doe Employees upgraded the call to a "high priority." (ECF No. 1, ¶ 47.) At no time did Decedent call police.

At approximately 8:51 p.m., Doe Officers responded to the scene with guns drawn and knocked on Decedent's door. (ECF No. 1, ¶ 48.) The Doe Officers called out on a microphone for individuals in Decedent's apartment to come out. (ECF No. 1, ¶ 48.) A neighbor that lived below Decedent told at least one Doe Officer that Decedent was home, a man had broken into the apartment, showed the Doe Officer the broken glass, and stated she had seen this man assault Decedent on

previous occasions. (ECF No. 1, ¶ 51.) Doe Officers called Decedent's phone and received no answer. (ECF No. 1, ¶ 52.) Doe Officers left after 15 minutes. (ECF No. 1, ¶ 53.)

Based on the above facts, Plaintiffs assert the following causes of action:

1. 42 U.S.C. § 1983: Fourteenth Amendment, State-Created Danger (*Monell*) by Plaintiff Estate[1] against City, Chief Nisleit, and Supervisor Does;

2. 42 U.S.C. § 1983: Fourteenth Amendment, Due Process by Plaintiff Dadkhah against Officer Does and Employee Does;

3. 42 U.S.C. § 1983: Fourteenth Amendment, Due Process by Plaintiff Estate against Officer Does and Employee Does;

4. Negligence by Plaintiff Estate against City, Chief Nisleit, Officer Does, Employee Does, and Supervisor Does; and

5. Bane Act by Plaintiff Estate against City, Officer Does, and Employee Does.

Defendants City and Chief Nisleit now move this Court for an Order dismissing all claims.[2]

## III.   AUTHORITY FOR MOTION

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), a party may move to dismiss if the complaint fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Plaintiffs' counsel confirmed during meet and confer discussions this claim is only brought on behalf of Plaintiff Estate.

[2] No appearance is made on behalf of the unnamed and unserved Doe Employees, Doe Officers, and Doe Supervisors. However, Plaintiff must first establish a constitutional violation by one or more of those individuals to pursue claims against the City or Chief Nisleit. Therefore, this motion still analyzes the allegations related to those individuals.

In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings "in the light most favorable to the plaintiff," and further, "must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

## IV.   PLAINTIFF FAILS TO PLEAD SUFFICIENT FACTS TO ESTABLISH A CLAIM FOR RELIEF UNDER *MONELL*

Plaintiff Estate's first claim alleges a § 1983 *Monell* claim against Defendants City and Chief Nisleit. A plaintiff may hold a municipality liable under § 1983 if his injury was inflicted pursuant to city policy, regulation, custom, or usage. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-91 (1978). To plead a *Monell* claim with sufficient particularity under the requirements set forth by *Iqbal* and *Twombly*, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Plaintiff Estate's *Monell* claim fails for two reasons. To prevail on a *Monell* claim, Plaintiff Estate must first establish a constitutional violation, which they cannot do. Even if there was a constitutional violation, Plaintiff Estate also does not

allege sufficient facts to support either theory of liability under *Monell*. Plaintiff's *Monell* claim is based on two theories: (1) adoption of official policies and procedures and/or longstanding practice; and (2) a custom of deliberate indifference to the training and supervision which caused the deprivation of a constitutional right. Neither theory has factual support.

**A. Plaintiff Estate Cannot Establish A *Monell* Claim Because There Was No Constitutional Violation**

For a municipality to be liable, there must be a constitutional deprivation. If there is no constitutional deprivation, there is no need to determine if a municipal defendant caused it. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability."). Plaintiff Estate alleges Decedent had a right "to be free from state-created danger." (ECF No. 1, ¶ 76.) As pleaded, the facts do not state a claim for relief because there is no Fourteenth Amendment violation.

The Fourteenth Amendment's Due Process Clause is a limitation on state action and is not a "guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Simply failing to prevent acts of a private party is insufficient to establish liability. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). "The general rule is that a state is not liable for its omissions" and the Due Process Clause does not "confer any affirmative right to government aid, even where such aid may be necessary to secure life, liberty, or property interests." *Id*. at 971 (quoting *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082, 1086 (9th Cir. 2000)); *DeShaney*, 489 U.S. at 196). Nor does it "impose a duty on the state to protect individuals from third parties." *Patel*, 648 F.3d at 971 (quoting *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007)). The state may be required to protect a plaintiff that it "affirmatively places . . . in danger by acting with 'deliberate indifference' to a

'known or obvious danger.'"[3] *Patel*, 648 F.3d at 971-72 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). The relevant question is whether "state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1061 (9th Cir. 2006).

In *DeShaney*, the Supreme Court held that social workers and local officers were not liable for injuries inflicted on a child by his father. 489 U.S. at 191. Although the defendants knew or should have known that the child was being beaten by his father, and failed to rescue him from his father's abuse, the Court found "that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 197.

As in *DeShaney*, the Defendants played no part in the creation of any danger to Decedent, nor did they do anything to render Decedent more vulnerable to the danger posed by Chambers. No facts establish any Doe Defendant acted with subjective deliberate indifference to the rights of Decedent when they implicitly communicated to neighbors that either help was coming or was there.

### 1. Defendant Doe Employees' and Doe Officers' Affirmative Actions did not Expose Decedent to An Actual, Particularized Danger

"To satisfy the first requirement of an affirmative act, a plaintiff 'must show that the officers' affirmative actions created or exposed [Decedent] to an actual, particularized danger that [Decedent] would not otherwise have faced.'" *Murgia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (quoting *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)). Failing to act, even in the face of a known danger, does not suffice to impose a duty under the doctrine. Affirmative conduct is needed. *See Johnson v. City of Philadelphia*, 975 F.3d 394 (3rd Cir. 2020)

---

[3] Another exception applies when an individual is in custody, and therefore a special relationship exists. Because Decedent was not in custody, this exception does not apply.

(dispatchers' failure to communicate location of family to firefighters resulting in their death was a "classic allegation of omission").

Here, Plaintiffs allege that the Doe Defendants had a duty to protect Decedent because they "created a dangerous situation" by: (1) failing to respond in a timely and effective manner; (2) assuring concerned neighbors and citizens that they would respond and lulling neighbors and citizens into relying upon those representations; (3) preventing concerned neighbors and citizens from entering [Decedent's] apartment and preventing them from trying to save her or render aid to her themselves; and (4) failing to ensure that [Decedent] was okay once they responded to the scene. (ECF No. 1, ¶¶ 56-59.) The Does' alleged failures to act cannot be the basis for a constitutional violation.

There is no Ninth Circuit precedent establishing that inaction, even in the face of a known or suspected danger, is enough to establish a constitutional deprivation. Instead, Ninth Circuit cases establish that liability only arises when there is both "(1) identifiable conduct by the state actor that rises to more than a mere failure to act, and (2) some contact or connection with the injured parties that creates a causal connection between the state actor's conduct and the increased danger." *Jamison v. Storm,* 426 F. Supp. 2d 1144, 1155 (W.D. Wash. 2006) (surveying Ninth Circuit precedent).

The Due Process Clause does not require officers to give aid to a victim, even when they prevent others from intervening to give aid. *See Estate of Amos ex rel. Amos v. City of Page,* 257 F.3d 1086 (9th Cir. 2001) (no affirmative conduct by officers calling off civilian search efforts at accident site); *Pierce v. Springfield Township*, 2013 WL 12099085 (S.D. Ohio 2013) (no affirmative action by officers who did not render first aid or permit civilians to approach gunshot victim while they awaited medical response).

As for the Doe Employees, the only potentially affirmative act alleged by Plaintiff is that they assured neighbors that the police would respond, thus lulling

the concerned neighbors into relying on those representations. Plaintiff provides a conclusory and speculative statement that, "the neighbors who called police did not act further because dispatch told them that help was on the way." (ECF No. 1, ¶ 42.) Even assuming the neighbors did not act further because of this statement, that statement still did not *create* or *increase* Decedent's exposure to danger for at least two reasons.

First, the alleged facts contradict the statement that neighbors "did not act further." The neighbors continued to monitor the situation, recognized that no officers were present, continued to call the police, continued to provide updated information about the situation, and then spoke with officers when they were on scene. The Doe Employees' statement that "help was on the way" was true -- officers responded. It also did not preclude the neighbors from acting on their own, if they chose to do so, nor did it prevent Decedent from acting on her own behalf. It is highly speculative and implausible to claim the neighbors would or could have acted in any way to save Decedent. Second, the Doe Employee's statement clearly did not create the danger of being abused and murdered by Chambers, nor did it expose Decedent to greater danger. The danger from Chambers was present prior to any involvement by Defendants. (ECF No. 1, ¶¶ 39-40.) The Doe Employees' statements did not change that danger. In fact, Chambers allegedly committed multiple acts of violence upon Decedent on prior occasions. (ECF No. 1, ¶¶ 61-62.)

As for the Doe Officers, Plaintiff alleges they failed to respond timely, prevented neighbors from entering Decedent's apartment and trying to save her themselves, and failed to ensure Decedent was okay once they responded to the scene. Again, the only potential affirmative act alleged is the prevention of neighbors entering the apartment and trying to save Decedent. Neither the failure to timely respond (or respond at all), nor the failure to enter Decedent's residence once on scene, can be said to be affirmative actions—these are omissions. Plaintiff alleges the Doe Officers' presence with guns drawn and callouts to those in

Decedent's apartment "communicated to neighbors . . . that they should stay inside their apartments, and that neighbors should not enter the apartment themselves to try to save [Decedent]." (ECF No. 1, ¶ 49.)

However, the alleged communication to neighbors did not *create* or *increase* the danger to Decedent. The Doe Officers' actions did not prevent the neighbors, nor Decedent, from acting on their own. Additionally, once the officers left, the neighbors could have acted, and did not. Notably, there are *no allegations* that the Doe Defendants communicated with Decedent or Chambers or had any effect on either Decedent's or Chamber's actions. Therefore, there is no constitutional violation.

### 2.  Defendant Doe Employees and Doe Officers Did Not Display Deliberate Indifference

"Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). This standard is higher than gross negligence and requires a culpable mental state. *Id.* at 974 (citing *L.W.*, 92 F.3d at 898-900); *see also Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994) (finding officers' failure to investigate a missing person complaint and lying about the status of the investigation to family members, resulting in the family members not themselves investigating, was at most grossly negligent). When assessing non-detainee failure-to-protect claims, courts apply a purely subjective deliberate indifference test. *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021). The official must have "recognized an unreasonable risk and actually intended to expose the plaintiff to such risk." *Id*. at 1160-61.

The act committed by Doe Employees was telling neighbors that "help was on the way" in response to two calls that a man was "banging on [Decedent's] door and screaming." (ECF No. 1, ¶ 41.) The Doe Employees continued to take repeated

calls from neighbors and elevated the priority of the call to "a high priority" based on information received. This statement cannot plausibly lead to a finding that the Doe Employees intended to expose Decedent to any risk, let alone the risk of her murder. As for the Doe Officers, they responded to the call with guns drawn, knocked on Decedent's door, made callouts on a microphone, communicated with Decedent's neighbors, called Decedent's phone, and remained on scene for 15 minutes. They also were required to weigh the competing interests of making a warrantless entry and potential of a violent confrontation. The Doe Officers' actions only demonstrate a thoughtful and rational response to the calls received, and do not establish a plausible claim that they acted with deliberate indifference toward Decedent. Therefore, there is no constitutional violation.

**B.  Plaintiff Estate Did Not Sufficiently Plead a *Monell* Claim Based on an Official Policy or Custom**

Plaintiff claims Defendants adopted official policies and procedures and permitted longstanding practices and customs which caused Decedent's death. (ECF No. 1, ⁋ 82.) However, Plaintiff fails to identify any specific customs and practices. In addition, no alleged custom or practice was the moving force behind a constitutional violation (because none occurred), nor did Plaintiff plead any facts establishing deliberate indifference.

To establish liability of a governmental entity based on an official policy or custom, a plaintiff must show: (1) the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotations omitted). The custom or policy must be so "persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

Firstly, Plaintiff cannot establish deprivation of a constitutional right. Plaintiff's allegations are wholly conclusory. Although Plaintiff references "other similarly situated victims" they do not allege that any of the purported acts taken in this case were done at any other time. Assuming Plaintiff is alleging the acts outlined in Paragraph 83 are customs or polices, the only allegation that Plaintiff claims is a persistent custom is failing to meet the department's stated goals for response times. As to all others, there are no allegations that support finding that this was anything more than a single occurrence, and therefore, not longstanding custom or practice.

Plaintiffs allege Chief Nisleit is a final policymaker for *Monell* purposes. (ECF No. 1, ¶ 75). The City can be liable for constitutional violations by those "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. However, Plaintiffs allege no facts to support a claim that Chief Nisleit acted or made a decision that violated Plaintiffs' rights, or that such action was taken in his role as a final policymaker. Whether a particular official has final policy-making authority is a question of state law. *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). The Court first identifies the particular area or issue for which the official is alleged to be the final policymaker and then must analyze state law to determine the official's function with respect to that area or issue. *Cortez v. City of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002). The Complaint is void of allegations relating to conduct by Chief Nisleit.

Further, Plaintiffs must demonstrate that the custom or policy was adhered to with "deliberate indifference to the constitutional rights" of the individual. *City of Canton*, 489 U.S. at 392. Even if there is a "policy" of delayed arrival, it is clear from the facts alleged and the materials cited that the City and Chief Nisleit do not condone the long response times and have taken action to improve them. And again, because these alleged policies will not result in a constitutional violation,

///

Plaintiff cannot establish that they were adhered to with deliberate indifference to constitutional rights or rely on them to establish municipal liability.

There must also be a direct causal link between the alleged policy and the constitutional deprivation. *See Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). The plaintiff must show "that the policy caused the violation in the sense the municipality could have prevented the violation with an appropriate policy." *Jackson v. Barnes*, 290 F.3d 755, 763 (9th Cir. 2014). Even assuming such a "policy" of failing to respond in a timely manner exists, Plaintiff fails to explain how this was the "moving force" behind the constitutional violation, as a failure to respond, whether untimely or not at all, cannot be the basis of a constitutional violation. This is also true for the other alleged acts and omissions in paragraph 83. Therefore, Plaintiff fails to plead a factual basis to support her claim of a longstanding policy or custom for *Monell* purposes.

## C. Plaintiff Did Not Sufficiently Plead a *Monell* Claim Based on a Failure to Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. A policy of inadequate police training may serve as the basis for § 1983 liability only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and where the identified training deficiencies are "closely related" to the plaintiff's ultimate injury. *See City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989); *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.

1    Plaintiff alleges Defendants failed to train and supervise their employees "to

2   prevent violations of the law and prevent the kind of harm that befell [Decedent]."

3   (ECF No. 1, ⁋ 87.) These allegations are vague and conclusory. Plaintiff does not

4   identify any specific training program, the deficiencies of such program, a pattern

5   of similar violations, nor a constitutional violation attributable to a lack of training.

6   For these reasons, Plaintiff fails to state a *Monell* claim for failure to train.

7    **D. The Court Should Dismiss All Claims Against Chief Nisleit as**

8    **Redundant**

9    Plaintiffs allege that they bring all claims against Defendant Chief Nisleit in

10   his official and individual capacities.[4] (ECF No. 1, ¶ 30.) A claim against Chief

11   Nisleit in his official capacity is a claim asserted against the City itself. *Brandon v.*

12   *Holt*, 469 U.S. 464, 471-72 (1985). Thus, any claim against Chief Nisleit is

13   redundant of that against the City and should be dismissed.

14   **V.    PLAINTIFF ESTATE FAILS TO ALLEGE SUFFICIENT FACTS**

15   **TO STATE A NEGLIGENCE CLAIM**

16    Under California law, the elements of negligence are "(1) defendant had a

17   duty to use due care, (2) defendant breached that duty, and (3) the breach of duty

18   was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San*

19   *Diego*, 57 Cal.4th 622, 627 (2013).

20   **A. Plaintiff's Negligence Claim Against the City Fails**

21    Plaintiff's negligence claim against the City is based on Government Code

22   section 815.2(a), which makes the City vicariously liable for an injury caused by its

23   employee within the scope of their employment. [5] (ECF No. 1, ¶ 111.) Therefore,

24   the relevant inquiry is whether Plaintiff sufficiently pled liability on behalf of any

25   _____

26   [4] During meet and confer discussions, Plaintiffs' counsel confirmed they
   were not making a claim against Chief Nisleit in his personal capacity. Therefore,
   that claim does not provide a separate theory of liability.

27

28   [5] The City cannot be directly liable for negligence. Cal. Gov't Code § 815;
   *see also De Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 253 (2007).

City employee. Because Plaintiff did not adequately plead a negligence claim against either Chief Nisleit or the Does, the Complaint fails to state a claim of negligence against the City.

### 1.  The Doe Defendants Had No Duty to Decedent

The existence of a duty is a question of law. *Dutton v. City of Pacifica*, 35 Cal. App. 4th 1171, 1175 (1995). Plaintiff alleges the Doe Employees and Doe Officers "had a duty to use reasonable care to protect [Decedent] from foreseeable harm from [Chambers]" and they breached this duty. (ECF No. 1, ¶ 108.) However, police do not owe any duty to individual members of the general public because "[a] law enforcement officer's duty to protect the citizenry is a general duty owed to the public as a whole." *Von Batsch v. Am. Dist. Telegraph Co*., 175 Cal App. 3d 1111, 1121 (1985).

Despite Plaintiff's claims that the Does had a "duty to protect" Decedent, this is not true. Under California law, public entities are generally not liable for failing to protect individuals against crime. *See Williams v. State of California*, 34 Cal. 3d 18, 23-24 (1983). "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1128-29 (2002) (quoting *Williams*, 34 Cal.3 d at 23). "In most instances, these general rules bar recovery when plaintiffs, having suffered injury from third parties who were engaged in criminal activities, claim that their injuries could have been prevented by timely assistance from a law enforcement officer." *Zelig*, 27 Cal. 4th at 1129 (2002) (citing *Williams*, 34 Cal. 3d at 25, *Benavidez v. San Jose Police Dept*., 71 Cal. App. 4th 853, 859-62 (1999) (no liability when the police responded to domestic violence call but failed to protect victim after her subsequent call for assistance).

///

A duty can arise in rare and narrow circumstances where there is a legally recognized special relationship. "In a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a "special relationship" with either the victim or the person who created the harm. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 215 (2021). A special relationship may be created "when the conduct of a police officer, in a situation of dependency, results in detrimental reliance on him for protection." *Williams*, 34 Cal. 3d at 25. Such action by the officers must have "contributed to, increased, and changed the risk which would have otherwise existed." *Id*. at 25.

> A special relationship between the police and an individual has been found in a few narrow circumstances where the police made specific promises to undertake a particular action and failed to do so [citation], where the police created or increased a peril by affirmative acts [citation] or where the police voluntarily undertook to aid an individual, took affirmative steps to aid the individual and by the acts lulled the individual into a false sense of security [citation]. [¶] Courts have refused to find a special relationship or impose liability based on the negligence by police personnel in responding to requests for assistance, in conducting or failing to conduct an investigation, in failing to warn of a potential danger or in failing to provide sufficient protection where the police have not induced reliance on a specific promise that they would provide specific protection.

*M.B. v. City of San Diego*, 233 Cal. App.3 d 699, 704-05 (1991), fns. omitted (finding no special relationship with rape victim despite telling her "not to worry," "these guys never come back", and agreeing to send a squad car to check on her, which never occurred). In addition, "[a] long line of cases has held that a special relationship with a person in peril is not established simply because police officers responded to a call for assistance and took some action at the scene." *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 279 (1998) (disapproved on other grounds in

///

///

///

///

///

*Brown*, 11 Cal. 5th at 217).[6] Responding to a citizen's call for assistance is "basic to police work and not 'special' to a particular individual." *M.B.,* 233 Cal. App. 3d at 706. Nor is it enough to assert that the officers took control of the situation. *Minch v. Dep't of California Highway Patrol*, 140 Cal. App. 4th 895, 905 (2006), citing *Adams*, 68 Cal. App. 4th at 280.

"Cases finding a special relationship based on the performance of police duties are *rare* and involve situations in which the victim detrimentally relied on some conduct or representation by the officer. [Citations]. 'The reliance must have exposed the victim to a risk of harm which was greater than the harm to which the victim was already exposed.'" *Golick v. State,* 82 Cal. App. 5th 1127, 1149 (2022) (italics added) (quoting *City of Santee v. Cnty. of San Diego,* 211 Cal. App. 3d 1006, 1016 (1989)).

Defendant Does provided no assurances of protection to Decedent. Plaintiff does not allege that Decedent relied on any action by the Does. Defendant Does had no contact with Decedent, and Decedent never at any time reached out to the police to request assistance. Any statement made to the *neighbors* does not create a special relationship between the Does and Decedent. In addition, no affirmative action taken by the Does contributed to, increased, or changed the risk to Decedent, as discussed *supra*. Based on the facts as pleaded, no special relationship existed between the Defendant Does and Decedent, and therefore, Defendants owed no duty to Decedent.

---

[6] *Lopez v. City of San Diego,* 190 Cal. App. 3d 678, 681 (1987) (no special relationship between police responding to restaurant massacre scene and victims of massacre where police delayed acting on plan to "neutralize" murderer); *Von Batsch,* 175 Cal. App. 3d at 1122 (no special relationship between county and decedent's surviving wife when county's officers responded to a burglar alarm, searched the premises, and erroneously advised decedent's co-employees that no intruders were on the premises); *Williams,* 34 Cal. 3d at 24 (no special relationship between stranded or injured motorist and police based on fact that police stopped to aid her); *Shelton v. City of Westminster,* 138 Cal. App. 3d 610, 621 (1982) (no special relationship between parents filing missing person report and police undertaking investigation of son's whereabouts).

### 2. Plaintiff Failed to Plead Any Facts to Support Gross Negligence Against Doe Employees

Health and Safety Code section 1799.107(b) provides in pertinent part: "[N]either a public entity nor rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, unless the action taken was performed in bad faith or in a grossly negligent manner." This qualified immunity applies to 911 emergency dispatching. *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (2003). Thus, Plaintiff must plead facts supporting a claim of gross negligence against the Doe Employees to state a claim. Gross negligence is defined as either a "want of even scant care" or "an extreme departure from the ordinary standard of conduct." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007).

Plaintiff failed to plead facts to support a gross negligence claim. Many of the alleged acts and omissions by the Doe Employees are subject to immunity, as discussed below, and cannot form the basis of a claim, including timely dispatching or failing to dispatch at all. In addition, Doe Employees continued to take repeated calls from neighbors and elevated the priority of the call to a "high priority" based on information received. The allegations as pleaded do not state a claim for gross negligence against the Doe Employees, and therefore, their acts cannot be the basis for the City's negligence.

### B. Plaintiff's Negligence Claim Against Chief Nisleit Fails

Plaintiff alleges Chief Nisleit breached his "duty of care in negligently supervising and training Doe Officers and Doe Employees, and negligently maintaining dangerous and unconstitutional policies and procedures and customs."[7]

---

[7] Plaintiff pleads the same allegation against the Doe Supervisors. For the same reason this claim fails against Chief Nisleit, so too does it against the Doe Supervisors, and thus the City cannot be vicariously liable for their negligence.

17

(ECF No. 1, ¶ 109.) To establish that Chief Nisleit owed any duty, Plaintiff Estate must plead a special relationship between Decedent and Chief Nisleit. *C.A. v. Williams S. Hart Union High Sch. Dist*., 53 Cal. 4th 861, 877 (2012); *see Kendrick v. Cnty. of San Diego*, 2018 WL 1316618, at *10-11 (S.D. Cal. Mar. 14, 2018). Plaintiff failed to allege facts establishing a special relationship between Decedent and Chief Nisleit. The Complaint is void of facts relating to Chief Nisleit or any connection of his to this case, the Decedent, or Chambers. There are no allegations that any act or omission by Chief Nisleit injured Decedent. Therefore, Plaintiff failed to plead a factual basis to support a claim of negligence against Chief Nisleit.

## VI.   PLAINTIFF ESTATE'S BANE ACT CLAIM AGAINST THE CITY FAILS

Plaintiff Estate alleges a Bane Act claim against the City based on vicarious liability of the Doe Defendants' alleged violation of Decedent's Fourteenth Amendment Due Process rights. (ECF No. 1, ¶¶ 114, 119.) "'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 755, 797 (2017) (quoting *Simmons v. Superior Court*, 7 Cal. App. 4th 1113, 1125 (2016)). The Bane Act requires a specific intent to violate a plaintiff's rights. *See Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

The Complaint is wholly void of any factual allegations to support this claim. Doe Defendants did not violate, nor attempt to violate, any right of Decedent, including her Fourteenth Amendment right. Plaintiff failed to allege facts to support any threats, intimidation, or coercion of Plaintiff. No factual allegations support a claim that any Defendant Doe had a specific intent to violate Decedent's rights.

///

Indeed, Defendants had *no contact* with Decedent. For these reasons, Plaintiff's Bane Act claim must also be dismissed.

## VII.   DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER CALIFORNIA STATE LAW

The California legislature has adopted numerous laws immunizing law enforcement officers from liability. "The statutory scheme shows legislative intent to immunize the police function from tort liability from the inception of its exercise to the point of arrest, regardless of whether the action be labeled 'discretionary' or 'ministerial.'" *Antique Arts Corp. v. City of Torrance*, 39 Cal. App. 3d 588, 593 (1974). Governmental entities are immune for discretionary acts, failing to provide police protection, and for failure to arrest. *See* Cal. Gov't Code §§ 820.2, 845, 846. Thus, the Doe Employees and Doe Officers are entitled to immunity for all acts alleged in the Complaint. Accordingly, under Government Code section 815.2(b), the City is also immune.

### A. Does and the City Cannot Be Liable for the Police Department's Discretionary Resource Allocations or Decision to Leave the Scene

Under Government Code section 820.2, a public employee is not liable for an injury resulting from his or her act or omission where the act or omission was the result of the exercise of the discretion vested in him or her. "Discretionary immunity under section 820.2 has been found to apply to many areas of police work." *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015 (2014) (discretionary decisions include the decision to pursue a fleeing vehicle, the decision to investigate an accident or not, the decision not to make an arrest, and the decision whether to use official law enforcement authority to resolve a dispute). Section 820.2 entitles public employees to immunity for policy decisions. To qualify for Section 820.2 immunity there must have taken place, "a policy decision, consciously balancing risks and advantages." *Greenwood v. City of Los Angeles*, 89 Cal. App. 5th 851, 861 (2023) (quoting *Johnson v. State of California*, 69 Cal. 2d

782, 794-95, n. 8 (1968)). Many of the alleged actions taken or not taken by the Does required the conscious balancing of risks and advantages and are thus categorized as discretionary. This includes how to prioritize calls, whether to respond to calls, in which order to respond to calls, and whether to enter Defendant's apartment.

Plaintiffs incorporate into the Complaint the budgets of the City of San Diego for fiscal years 2018-2023 as well as a Memorandum written by Chief Nisleit to the City's Chief Operating Officer. (ECF No. 1, ¶¶ 68-70.) The Court is permitted to consider this material in ruling on a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). These documents address the funding sources and expenditures of the many City Departments, including the police department, and how the City policymakers are choosing to allocate the limited resources available. Chief Nisleit's Memorandum outlines the staff shortages faced by the police department, particularly of available sworn officers capable of being deployed, noting in August 2022, the department had the "lowest available sworn staffing in over 15 years."[8] The Chief attributes this, in part, to the "policy decisions originating from the City." The Memorandum goes on to outline operational changes the department is making to shift resources to be able to respond to calls for service. Funding and resource allocations determine if a response will be made to a call for service and how quickly an officer can respond. Thus, discretionary immunity applies to the prioritization of calls and the timeliness of the response.

Additionally, the Doe Officers' decision to not enter Decedent's apartment is one that requires discretion. Discretionary decisions that are the result of "personal deliberation, decision and judgment" are entitled to immunity. *McCorkle v. City of*

---

[8] Document available at https://s3.documentcloud.org/documents/23719495/memo-sdpd-operations-update-080822-final.pdf (last accessed 2/20/2024).

*Los Angeles*, 70 Cal. 2d 252, 261-62 (1969). Plaintiffs in *Michenfelder v. City of Torrance,* 28 Cal. App. 3d (1972) alleged police officers failed "to take appropriate action to protect" the plaintiffs' property. The police investigated the scene of an alleged crime (trespass and damage) on plaintiffs' property, yet did nothing, and did not notify the plaintiffs. *Id*. at 204. The court rejected plaintiffs' argument that "once a city has decided to employ police and send them to the scene of an occurrence, the action of the officers there is ministerial." *Id*. at 207. In finding discretionary immunity applied, the Court considered how the officers had to weigh competing interests, including intrusions of liberty and property interests of those involved. "Such intrusions are, of course, a regular and necessary part of police work conducted for the preservation of public safety and order. But the decision to use this official authority on any particular occasion is peculiarly a matter of judgment and discretion." *Id*. at 206. After observing what was happening and listening to the persons present, the officers made a discretionary decision to not act against the trespassers—a decision for which they were immune. *Id*. at 207.

Similarly, Doe Officers decided to not make a warrantless entry into Decedent's home after arriving in force with guns drawn, knocking on Decedent's door, calling out on a microphone, speaking with neighbors, calling Decedent on her phone, and spending 15 minutes at the scene. This required gathering facts, evaluating options, and proceeding according to their professional judgment. This act required the weighing of competing interests – the threat to Decedent and the invasion of her privacy rights. Thus, Defendants cannot be liable for their discretionary acts involving the allocation of resources in responding to calls, nor the Doe Officers' decision to leave the scene rather than make a warrantless entry.

**B.  Does and the City Cannot Be Liable for Failure to Provide Police Protection**

The failure to provide police protection, or sufficient police protection will not result in governmental liability. *See* Cal. Gov't Code § 845; *Susman v. City of*

1   *Los Angeles*, 269 Cal. App. 2d 803 (1969). "Whether police protection should be

2   provided at all, and the extent to which it should be provided, are political decisions

3   which are committed to the policy-making officials of government. To permit

4   review of these decisions by judges and juries would remove the ultimate decision-

5   making authority from those politically responsible for making the decisions." *Zelig*

6   *v. County of Los Angeles,* 27 Cal. 4th 1112, 1141-42 (2002) (quoting Cal. Law

7   Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 845, p. 452). In

8   *Hartzler v. City of San Jose,* 46 Cal. App. 3d (1975), a woman called police to

9   report her former husband told her he was coming to her home to kill her and

10  requested assistance. 46 Cal. App. 3d 6, 8 (1975). The dispatcher told her to call

11  again when he arrived. *Id*. However, the former husband arrived and killed her

12  before she was able to call again. *Id*. Despite the police's awareness of many prior

13  threats and assault (20 calls in the last year), the Court of Appeal found the failure

14  to provide assistance was protected by the immunity in Government Code section

15  845. *Id*. at 8-10.

16       The alleged failure of the Doe Employees to timely dispatch officers, the

17  alleged failure of the Doe Officers to timely respond, and the alleged failure of the

18  Doe Officers to make a warrantless entry to ensure her safety are all acts for which

19  the Does are immune. Because the entity need not provide any police protection,

20  these allegations cannot serve as a basis for liability.

21       **C. Does and the City Cannot Be Liable for the Failure to Enforce a Law**

22       The failure to enforce a law will not result in governmental liability. Cal.

23  Gov't Code §§ 818.2, 821. In addition, the failure to arrest a person who is

24  violating the law will not result in governmental liability. Cal. Gov't Code § 846.

25  Therefore, any claims by Plaintiff that the Doe Officers could or should have

26  arrested Chambers for any crime cannot serve as a basis of liability.

27  ///

28  ///

## VIII.  CONCLUSION

Defendants respectfully request the Court dismiss each of Plaintiff's claims against the City and Chief Nisleit. Plaintiff did not sufficiently plead a factual basis to establish a constitutional violation, nor did Plaintiff plead a factual basis to establish any duty on behalf of Chief Nisleit or the Doe Defendants. Officers are immune from liability for the acts alleged by Plaintiff, and therefore, Plaintiff cannot plead a viable theory of liability against the Does, Chief Nisleit, or the City. The officers in this case did not act in a way to create or increase the harm to Decedent. That harm, and Decedent's death, were the result of Chambers' actions alone, and Defendants are not liable for the criminal acts of a third party.

Dated:  February 29, 2024

MARA W. ELLIOTT, City Attorney

By  */s/ Jacqueline J. McQuarrie*
     Jacqueline J. McQuarrie
     Chief Deputy City Attorney

Attorneys for Defendants