# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF NAHAL CONNIE
DADKHAH, by and through its
successor-in-interest, MANOUCHEHR
DADKHAH, and MANOUCHEHR
DADKHAH,

                                    Plaintiffs,

v.

CITY OF SAN DIEGO, et al.,

                                    Defendants.

Case No.:  3:24-cv-00097-RBM-DDL

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

**[Doc. 7]**

Pending before the Court is Defendant City of San Diego and Chief David Nisleit's motion to dismiss Plaintiffs' Complaint ("Motion"). (Doc. 7-1.) Plaintiffs Estate of Nahal Connie Dadkhah ("Plaintiff Estate") and Manouchehr Dadkhah (collectively, the "Plaintiffs") filed an opposition to Defendants' Motion ("Opposition"). (Doc. 8.) Defendants filed a reply brief ("Reply"). (Doc. 9.)

This case concerns the San Diego Police Department's ("SDPD") response to the events preceding the death of Nahal Connie Dadkhan ("Connie") allegedly at the hands of Parrish Chambers on June 14, 2022. In Plaintiffs' Complaint, they bring 28 U.S.C. § 1983 *Monell* and Fourteenth Amendment due process claims, as well as state law negligence and

Bane Act claims against the City of San Diego, SDPD Chief David Nisleit, 10 SDPD officers who responded to the scene of the disturbance ("Doe Officers 1–10"), 5 SDPD employees responsible for providing accurate and thorough information to Doe Officers 1–10 ("Doe Employees 1–5"), and 6 SDPD officers responsible for training and supervising Doe Officers 1–10 ("Doe Officer Supervisors 1–6). (Doc. 1 ¶¶ 29–36.)

In their Motion, Defendants argue Plaintiffs fail to sufficiently plead a *Monell* claim (First Cause of Action) because (1) there was no constitutional violation and (2) Plaintiffs fail to identify any specific policy or custom, fail to point to deliberate indifference in maintaining such policy or custom, and there is no direct causal link between a policy or custom and the alleged constitutional violation. (Doc. 7-1 at 9–17.) With respect to a constitutional violation (Second and Third Causes of Action) specifically, Defendants argue Plaintiffs failed to establish a state-created danger claim. (*Id.* at 10–15.) Defendants argue Plaintiffs failed to plead a *Monell* failure to train claim (First Cause of Action). (*Id.* at 17–18.) Defendants contend all of the claims against Chief Nisleit are redundant because an official capacity suit against him is a suit against the City of San Diego. (*Id.* at 18.) Defendants argue Plaintiffs' negligence claim (Fourth Cause of Action) fails because Doe Employees 1–5 and Doe Officers 1–10 had no duty to Connie and Plaintiffs fail to plead facts supporting gross negligence. (*Id.* at 18–22.) Defendants also argue Plaintiffs' negligence claim as to Chief Nisleit fails because he had no special relationship with Connie nor did any of his acts or omissions harm her. (*Id.* at 22–23.) Defendants argue Plaintiffs' Bane Act claim (Fifth Cause of Action) fails because (1) their due process claims fail; (2) Plaintiffs did not allege facts supporting any threats, intimidation, or coercion; and (3) Plaintiffs did not allege facts supporting a specific intent to violate Connie's rights. (*Id.* at 23–24.) Lastly, Defendants argue Doe Employees 1–5 and Doe Officers 1–10 are entitled to state law immunity under California Government Code §§ 820.2, 845, and 846. (*Id.* at 24–27.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Defendants'

Motion is **<u>GRANTED</u>**.

## I.   BACKGROUND

The facts and claims alleged in Plaintiffs' Complaint are as follows.

**A. Nahal Connie Dadkhah**

Connie was a medical research assistant and production manager who volunteered at a local mental health outreach center in her free time.  (Doc. 1 ("Complaint") ¶ 2.) Connie resided in a unit on the second floor of a two-story condominium located in the City of San Diego.  (*Id.* ¶ 38.)

**B. Before Police Were Called**

"On June 14, 2022, at approximately 4:00 p.m., Connie's neighbors observed an agitated man, Parrish Chambers, on the stairs outside of Connie's unit.  Chambers was yelling and rambling.  Neighbors recognized Chambers from prior incidents."  (*Id.* ¶ 39.) Neighbors observed Chambers outside for hours angry, yelling aggressively, and appearing highly agitated.  (*Id.* ¶ 40.)

**C. Police Called**

"At approximately 7:00 p.m., at least two of Connie's neighbors called the police to report to Doe Employees that Chambers was banging on Connie's door and screaming.  On information and belief, no officers were dispatched."  (*Id.* ¶ 41.)  These neighbors did not act further because dispatch told them help was on the way.  (*Id.* ¶ 42.)  Between 7:00 to 8:00 p.m., individuals made approximately five additional calls to police warning the Doe Employees about Chambers being outside of Connie's apartment, but upon information and belief, officers were not dispatched.  (*Id.* ¶ 43.)  At 7:53 p.m., a neighbor heard and saw a man climb onto Connie's balcony and break through her glass door and enter her unit.  (*Id.* ¶ 44.)  At approximately 8:00 p.m., at least one other neighbor called the police again and told Doe Employees she was extremely concerned about "Connie's safety and what was going on in her apartment."  (*Id.* ¶ 45.)  Another neighbor called the police and told Doe Employees she observed an active burglary, saw a man enter through a second story sliding glass door, and bust down the door.  (*Id.* ¶ 46.)  While on the call, the neighbor

told a Doe Employee she heard a physical fight and thought the man was going to kill Connie.  (*Id.*)

**D. High Priority**

Doe Employees upgraded the call to a high priority.  (*Id.* ¶ 47.)  According to SDPD's Communications Division Priority System, priority one calls like Connie's should be "dispatch[ed] immediately."  (*Id.* ¶ 66.)  For the past five years, SDPD has failed to meet its public safety standards and key performance indicators for priority one calls.  (*Id.* ¶ 68.)  In 2022, SDPD and the City's average response time target for priority one calls was 14 minutes, but the actual average response time was 36.8 minutes.  (*Id.* ¶ 69.)  Defendant Chief Nisleit acknowledged SDPD deficiencies in a memorandum issues two months after Connie's murder.  (*Id.* ¶ 70.)

**E. Arrival**

At approximately 8:51 p.m., Doe Officers showed up with guns drawn and knocked on Connie's door.  (*Id.* ¶ 48.)  Doe Officers called out on a microphone for individuals to come out of Connie's apartment.  (*Id.*)  Uniformed and armed officers, patrol cars, and amplified public announcements communicated to neighbors that the police were there to help Connie and they should not enter the apartment themselves to try and save her.  (*Id.* ¶¶ 49–50.)  A neighbor that lived in the apartment below Connie told at least one Doe Officer that Connie was home, that a man broke into her apartment, and showed the officer broken glass.  (*Id.* ¶ 51.)  On information and belief, that neighbor told the Doe Officer she had seen Chambers assault Connie on previous occasions.  (*Id.* ¶ 52.)  On information and belief, Doe Officers were outside of Connie's apartment for approximately 15 minutes before leaving.  (*Id.* ¶ 53.)

**F. Next Morning**

"On the morning of June 15, 2022, Doe Officers returned to Connie's apartment after they received a call from a neighbor who was told by Chambers to call the police because Connie was dead.  Doe Officers found Connie dead in her apartment."  (*Id.* ¶ 54.)
///

**G. Past Incidents**

On information and belief, Doe Officers and Doe Employees had actual or constructive possession of information that, over the past two years, the police responded to several incidents at Connie's apartment that showed Chambers had prior instances of violence, stalking, and abuse toward Connie. (*Id.* ¶ 60.) Upon information and belief, Doe Officers and Doe Employees had actual or constructive possession of information concerning a prior incident on November 2, 2021, where Chambers reportedly dragged Connie by her hair into her SUV and drove away. (*Id.* ¶ 61.) Upon information and belief, Doe Officers and Doe Employees had actual or constructive possession of information concerning a prior incident on April 22, 2022, where Chambers showed up to Connie's apartment and yelled at, grabbed, pulled, and punched Connie. (*Id.* ¶ 62.) The information from that incident indicated Connie was visibly injured and Chambers did not live with Connie. (*Id.*) Upon information and belief, Doe Officers and Doe Employees had actual or constructive possession of information concerning an April 22, 2022 incident instructing officers to send at least 3 officers, a sergeant, and a K-9 unit if a call for service is made for Connie's address. (*Id.* ¶ 63.) Upon information and belief, Doe Officers and Doe Employees had actual or constructive possession of information concerning Chambers' criminal record and that a judge ordered him to stay away from Connie as a condition of his probation. (*Id.* ¶ 64.)

**H. Training**

"Despite knowledge of the danger longer response times create, the City, Chief Nisleit, Doe Officer Supervisors had insufficient and ineffectual policies, procedures, training, and supervision in place to have addressed this foreseeable and preventable harm, and/or their training of its officers to prevent the negligence and constitutional violations that occurred here was deficient." (*Id.* ¶ 71.) "Despite actual and constructive knowledge of the risks posed by stalkers abusers like [Chambers], the City, Chief Nisleit, Doe Officer Supervisors had insufficient and ineffectual policies, procedures, communication, training, and supervision in place to ensure victims like Connie are protected from their abusers."

5

(*Id.* ¶ 72.)

**I.  42 U.S.C. § 1983 – Fourteenth Amendment, State-Created Danger (*Monell*) (First Cause of Action)**

Plaintiffs allege Connie had a constitutional right to be free from state-created danger.  (*Id.* ¶ 76.)  Plaintiff Estate alleges this cause of action against the City of San Diego, Chief Nislet, and the Supervisory Does.  (*Id.* ¶ 74.)  Plaintiff Estate alleges these Defendants "collectively committed affirmative acts, as well as deliberate failures to act, placing Connie in particularized danger at the hands of" Chambers.  (*Id.* ¶ 78.)  Plaintiff Estate alleges these Defendants made the following intentional decisions and omissions: (1) Doe Employees failed to dispatch police officers immediately when multiple calls were made about a known and dangerous individual; (2) Doe Employees failed to dispatch police officers immediately when there were documented prior instances of violence at the same location involving the same abuser and victim; (3) Doe Officers failed to respond to a call in a timely manner and in accordance with the City and SDPD's public safety standards and key performance indicators when there were known and documented instances of violence at the same location involving the same abuser and victim; (4) Doe Employees and Doe Officers failed to communicate available information of prior instances of violence and abuse; (5) Doe Employees and Doe Officers ignored or failed to respond in accordance with available information of prior instances/reports of violence and abuse; and (6) Doe Officers ignored obvious and known dangers expressed by witnesses such as broken glass and prior instances of abuse/violence and failed to respond in an effective manner to ensure Connie was safe.  (*Id.* ¶ 83.)

Plaintiff Estate alleges Defendants maintained a policy of failing to train and supervise their employees and agents to prevent violations of law and the kind of harm that befell Connie.  (*Id.* ¶¶ 87–88.)  Plaintiff Estate alleges, despite Defendants' knowledge that such acts and omissions put abused women like Connie at risk, they nevertheless failed to adequately supervise or train their employees and agents.  (*Id.* ¶¶ 89–90.)

///

**J.  42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process (Second Cause of Action)**

Plaintiff Manouchehr Dadkhah, as an individual, alleges this Fourteenth Amendment substantive due process claim against Doe Officers and Doe Employees for depriving him of his right to companionship with his daughter Connie.  (*Id.* ¶ 92.)  Specifically, he had the right not to have his daughter placed in a position of actual, particularized danger by virtue of the affirmative acts or deliberate omissions of government agents.  (*Id.* ¶ 93.)  Defendants acted with deliberate indifference and both objective and subjective knowledge and disregard of the known and obvious dangers posed by Chambers.  (*Id.* ¶ 94.)

**K.  42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process, State-Created Danger (Third Cause of Action)**

Plaintiff Estate alleges Connie had a constitutional right to be free from state-created danger.  (*Id.* ¶ 100.)  Plaintiff Estate alleges Doe Officers and Doe Employees, collectively committed affirmative acts, as well as deliberate failures to act, that placed Connie in particularized danger at the hands of Chambers.  (*Id.* ¶ 102.)  Plaintiff Estate alleges Doe Employees and Doe Officers acted with deliberate indifference and both objective and subjective knowledge and disregard of the known and obvious dangers posed by Chambers.  (*Id.* ¶ 103.)

**L.  Negligence (Fourth Cause of Action)**

As a successor in interest pursuant to California Code of Civil Procedure § 377.30, Plaintiff Estate alleges Doe Officers and Doe Employees had a duty to use reasonable care regarding members of the public and a duty to use reasonable care to protect Connie from foreseeable harm from Chambers.  (*Id.* ¶ 108.)  Plaintiff Estate alleges Doe Officers and Doe Employees breached their duties of care and caused harm to Plaintiff Estate.  (*Id.*)  Plaintiff Estate also alleges Chief Nisleit, Doe Supervisors, and the City breached their duty of care by negligently supervising and training Doe Officers and Doe Employees and negligently maintaining dangerous and unconstitutional policies, procedures, and customs.

7

1    (*Id.* ¶ 109.)

2        **M. Bane Act (Fifth Cause of Action)**

3        As a successor in interest pursuant to California Code of Civil Procedure § 377.30,

4   Plaintiff Estate alleges Defendants' due process violations are sufficient to constitute

5   violations of the Bane Act.  (*Id.* ¶¶ 113–14.)

6                           **II.    LEGAL STANDARD**

7        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

8   state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"

9   *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro*

10  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  An action may be dismissed for failure to

11  allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*

12  *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

13  pleads factual content that allows the court to draw the reasonable inference that the

14  defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

15  'probability requirement,' but it asks for more than a sheer possibility that a defendant

16  acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

17  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

18  in the complaint as true and construe[s] the pleadings in the light most favorable to the

19  nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031

20  (9th Cir. 2008).

21                          **III.    DISCUSSION**

22       The Court will first examine the claims against Chief Nisleit and then each of

23  Plaintiffs' causes of action.

24      **A. Claims Against Chief Nisleit**

25       Defendants argue the claims against Chief Nisleit should be dismissed because they

26  are only brought against him in his official capacity and are therefore asserted against the

27  City itself.  (Doc. 7-1 at 18; 18 n.4.)

28       "A suit against a governmental officer in his official capacity is equivalent to a suit

                                        8

against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*...local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996). Because all claims against Chief Nisleit are duplicative of Plaintiffs' claims against the City, the Court **DISMISSES** all claims against Chief Nisleit.

**B. *Monell* claim (First Cause of Action)**

A municipal entity is liable under § 1983 only if the plaintiff alleges his constitutional injury was caused by employees acting pursuant to a municipal policy or custom. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). A municipality may not be held vicariously liable under § 1983 simply based on allegedly unconstitutional acts of its employees. *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014). Instead, the municipality may be held liable when its policy or custom "caused a constitutional tort." *Monell*, 436 U.S. at 691. Accordingly, to succeed on a *Monell* claim, a plaintiff must show "(1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the 'moving force behind the constitutional violation.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).

**1. Constitutional Violation (Second and Third Causes of Action)**

Without a constitutional violation, "there can be no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). Plaintiff Dadkhah and Plaintiff Estate allege Fourteenth Amendment substantive due process violations in their Second and Third Causes of Action, respectively, under the state-created danger doctrine. (Doc. 1 ¶¶ 91–105.) The Court considers Plaintiffs' Second and Third Causes of Action first below because a constitutional violation is a prerequisite to a finding of municipal

9

liability under *Monell*.

"As a general matter ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "Simply failing to prevent acts of a private party is insufficient to establish liability." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). "The general rule is that a state is not liable for its omissions" and the Due Process Clause does not "impose a duty on the state to protect individuals from third parties." *Id.* (citations omitted). There are two exceptions.

"First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect." *Id.* (citing *DeShaney*, 489 U.S. at 198–202). However, "[t]he special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Patel*, 648 F.3d at 972. Because Connie was not in custody at the time of the incident, this exception is not applicable here.

"Second, the state may be constitutionally required to protect a plaintiff that it 'affirmatively places ... in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Martinez*, 943 F.3d at 1271 (quoting *Patel*, 648 F.3d at 971–72). In order for Plaintiffs to prove a state-created danger claim, they must establish three elements. "First, [they] must show that the officers' affirmative actions created or exposed [Connie] to an actual, particularized danger that [Connie] would not otherwise have faced. Second, [they] must show that the injury [Connie] suffered was foreseeable. Third, [they] must show that the officers were deliberately indifferent to the known danger." *Martinez*, 943 F.3d at 1271 (citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018)).

The parties do not address the foreseeability element. (*See* Docs. 7–9.) Thus, the Court need not discuss that element and only addresses the affirmative act and deliberate indifference prongs.

///

### i. Affirmative Acts

Defendants argue inaction, even in the face of a known or suspected danger, is not enough to establish a constitutional deprivation. (Doc. 7-1 at 12.) For the Doe Employees, Defendants argue Plaintiffs' allegation that the neighbors who called the police did not act further because dispatch told them help was on the way is conclusory. (*Id.* at 13.) Defendants add, even if that were true, they did not create or increase Connie's exposure to danger because (1) neighbors continued to monitor the situation and were not precluded from acting on their own, (2) it is highly speculative to claim the neighbors could have saved Connie, and (3) the Doe Employees' statements did not expose Connie to greater danger. (*Id.*) For the Doe Officers, Defendants argue the only affirmative act is that their presence with guns drawn and callouts communicated to neighbors not to enter Connie's apartment, but such acts did not create or increase the danger posed to Connie nor prevented neighbors from acting on their own. (*Id.* at 13–14.) Plaintiffs argue Defendants knew Chambers was a danger to Connie, neighbors and third parties relied on their representations that help was on the way and failed to intervene due to police involvement, and police announced their presence, including to Chambers. (Doc. 8 at 3–6.)

### a) Case Law

"To satisfy the first requirement, a plaintiff 'must show that the officers' affirmative actions created or exposed [him] to an actual, particularized danger that [he] would not otherwise have faced.'" *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (quoting *Martinez*, 943 F.3d at 1271). "In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Id.* (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). "The critical distinction is not ... an indeterminate line between danger creation and enhancement, but rather the stark one between state action and inaction in placing an individual at risk." *Id.* (quoting *Penilla v. City of*

*Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997)). "Whether the danger already existed is not dispositive because, 'by its very nature, the doctrine only applies in situations in which the plaintiff was directly harmed *by a third party*—a danger that, in every case, could be said to have 'already existed.'" *Martinez*, 943 F.3d at 1271 (quoting *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012)).

Affirmative action is required. *See Hernandez*, 897 F.3d at 1133 (finding officers engaged in affirmative acts increasing danger at rally by actively preventing attendees from leaving through alternative exits and directing them to leave through a single exit into a crowd of violent protesters); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006) (finding officer affirmatively placed plaintiff in danger she would not have otherwise faced by informing her assailant of her family's accusations against him and thereby leaving her without an opportunity to protect herself); *Munger*, 227 F.3d at 1087 (finding officers affirmatively placed intoxicated plaintiff in danger by ejecting him from bar late at night into subfreezing temperatures); *Penilla*, 115 F.3d at 710 (finding plaintiff sufficiently alleged officers took affirmative acts by cancelling a 911 call to paramedics, dragging the plaintiff from his porch to an empty house, locking the door and leaving him there alone after finding him in serious medical need); *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir. 1989) (finding triable issue of fact as to whether officer affirmatively placed passenger plaintiff in danger by stranding her in high crime area in middle of the night after arresting driver and impounding vehicle).

Inaction is insufficient. For example, in *Martinez*, the plaintiff brought a state-created danger claim against three police officers arising from two incidents of domestic violence allegedly perpetrated by another police officer. 943 F.3d at 1265–69. Regarding the first officer, the Ninth Circuit found that officer's failing to inform the plaintiff of her rights, failing to give her a domestic violence victim handout, failing to separate her from her alleged abuser, and failing to arrest him, while a potential dereliction of duty, were not affirmative acts that made the situation worse for the plaintiff. *See id.* at 1272. However, the Ninth Circuit concluded a reasonable jury could find the first officer engaged in an

affirmative act placing plaintiff in greater danger by telling her alleged abuser about her testimony relating to his prior abuse and that she was not the right girl for him.  *Id.* Regarding the second officer, the Ninth Circuit concluded that officer's failing to separate the plaintiff and her alleged abuser, failing to arrest him, failing to provide her information that may have allowed her to escape further abuse, and failing to issue an emergency protective order, were not affirmative acts placing her in more danger.  *See id.* at 1272–73. Regarding the third officer, the Ninth Circuit determined that the sergeant's telling the second officer positive comments about the character of the alleged abuser placed the plaintiff in greater danger by emboldening her alleged abuser.  *See id.* at 1273.

Additionally, the Ninth Circuit has addressed the state-created danger exception in the context of a failed attempt to aid or rescue.  In *Estate of Amos ex rel. Amos v. City of Page*, police officers arrived on the scene after a car collision and one of the drivers, Amos, had already disappeared into the desert.  257 F.3d 1086, 1089 (9th Cir. 2001).  The officers halted civilian search efforts for Amos and instructed the people who had stopped at the scene to leave the accident site.  *Id.*  The officers discovered blood in Amos' car, began their own search, but then cut it short once their flashlights lost power.  *Id.*  A helicopter also abandoned search efforts due to concerns with nearby power lines.  *Id.*  No subsequent search was conducted until over a month later and Amos' body was not discovered until three years later.  *See id.*  Regarding the plaintiff's state-created danger claim, the Ninth Circuit found that the officers did not engage in an affirmative act that placed Amos in greater danger.  *See id.* at 1091–92.  Specifically, the Ninth Circuit reasoned that the officers did not interact with Amos, so they did not create or leave him more vulnerable to a pre-existing danger.  *See id.* at 1091.  The Ninth Circuit then stated that "[a]lthough in theory a very poor rescue attempt could make those needing rescue worse off than if the attempt had not been made, the probability that the conduct of the police officers in this case actually made Amos worse off is extremely speculative."  *Id.* (citing *Jackson v. City of Joliet*, 715 F.2d 1200, 1205 (7th Cir. 1983) ("If the defendants deprived [Amos] of anything it was of some right to competent rescue services.  But ... there is no such right in

the Fourteenth Amendment.")).

The Ninth Circuit then distinguished the case before it from *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), in which the Seventh Circuit held a deputy sheriff committed a constitutional tort by expressly preventing onsite private rescue personnel from attempting to save a child in Lake Michigan because they were not "authorized" fire department divers. *Id.* at 1091–92. The Ninth Circuit explained that, in *Ross*, the child's location and risk of death were known and well-equipped and trained private rescue personnel were on the scene before the deputy sheriff barred any rescue attempt. *Id.* at 1092. The Ninth Circuit reasoned that the chances of a successful rescue in *Ross* were high and the link between the deputy sheriff's conduct and the child's death was proximate. *Id.*

In *Amos*, however, the Ninth Circuit concluded police were not aware of Amos' location and the extent of his injuries. *Id.* And the civilian rescue efforts consisted of no more than a few passing by drivers who stopped, it was not alleged those drivers possessed any special safety training or skills, and there was no reason to believe their rescue efforts would have been successful had police not intervened. *Id.* The Ninth Circuit therefore determined the probability the officers' made Amos worse off was "extremely speculative." *Id.*; *c.f. Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082–83 (9th Cir. 2013) (finding officers affirmatively placed victim in increased danger by preventing her ambulance from leaving following a gunshot wound due to securing a crime scene).

### b) Analysis

For Doe Employees, Plaintiffs specifically allege they engaged in the following affirmative acts: (1) failing to dispatch police immediately when multiple calls were made about a known and dangerous individual; (2) failing to dispatch police immediately when there were documented prior instances of violence at the same location involving the same abuser and victim; (3) failing to communicate available information about prior instances of violence and abuse; and (4) ignoring or failing to respond in accordance with available information of prior reports of violence and abuse. (*See* Doc. 1 ¶ 83(A), (B), (D), and (E).) For Doe Officers, Plaintiffs specially allege they engaged in the following affirmative acts:

(1) failing to respond to a call in a timely manner; (2) failing to communicate available information about prior instances of violence and abuse; (3) ignoring or failing to respond in accordance with available information of prior reports of violence and abuse; and (4) ignoring the obvious and known dangers expressed by witnesses such as broken glass, prior instances of abuse, and failing to ensure Connie was safe.  (*See* Doc. 1 ¶ 83(C), (D), (E), and (F).)

None of these failures to act are affirmative actions that placed Connie in more danger than she otherwise faced from Chambers.  *See Martinez*, 943 F.3d at 1272–73. However, Plaintiffs also allege neighbors did not act further because dispatch told them help was on the way, and that the presence of uniformed, armed officers making public announcements communicated to neighbors they should not try to enter Connie's apartment themselves.  (*See* Doc. 1 ¶¶ 42, 49–50.)  Plaintiffs allege these actions led neighbors to rely on those representations and prevented them from entering Connie's apartment to try to save her.  (*See id.* ¶¶ 57–58.)  These references appear to refer to the actions of Doe Employees and Doe Officers, respectively.  Yet these actions are not affirmative acts that placed Connie in increased danger than she already faced from Chambers.  Doe Employees and Doe Officers did not interact with Connie, even if they were aware of her location, that Chambers burglarized her home, and the risk of potential injuries from a neighbor's reporting a physical fight and belief that Chambers was going to kill Connie.  (*See id.* ¶ 46.)  *See Estate of Amos ex rel. Amos*, 257 F.3d at 1091–92.

It is also highly speculative that unspecified neighbors or civilians could have successful intervened to prevent harm to Connie.  *See id.*  Notably, there are no allegations concerning the timing of Connie's death and thus whether any actions by police officers or neighbors could have done anything to help protect Connie from Chambers.  Also, the Court is not persuaded by Plaintiffs' argument comparing this case to one in which police officers disclose a victim's complaint to an alleged abuser.  (Doc. 8 at 5–6.)  Police making public announcements and ordering individuals to come out of the apartment are not equivalent to providing a perpetrator notice of a victim's complaint.  *See Martinez v. High*,

15

91 F.4th 1022 (9th Cir. 2024) (finding officer's notifying alleged abuser of plaintiff's confidential domestic violence report placed her at risk of violent retaliation).

To be clear, Doe Employees or Doe Officers actions in failing to timely respond to prevent Chambers from entering Connie's apartment or thereafter ensuring Connie was safe by entering her apartment are deeply regrettable. However, they did not affirmatively "expose[] [Connie] to an actual, particularized danger that [she] would not otherwise have faced." *Murguia*, 61 F.4th at 1111.

### ii.  Deliberate Indifference

Defendants argue that the Doe Employees, in taking calls from the neighbors and elevating the call to a high priority, did not intend to expose Connie to any risk. (Doc. 7-1 at 14–15.) Defendants argue that the Doe Officers, by responding to the call with guns drawn, knocking on Connie's door, calling out on the microphone, communicating with neighbors, calling Connie's phone, and remaining on the scene for 15 minutes, demonstrated a thoughtful and rational response to the calls received, not deliberate indifference. (*Id.*) Defendants add that the Doe Officers were "required to weigh the competing interests of making a warrantless entry and potential of a violent confrontation." (*Id.* at 15.) Plaintiffs do not respond to Defendants' deliberate indifference arguments.

"Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "[T]he standard we apply is even higher than gross negligence—deliberate indifference requires a culpable mental state." *Id.* (citing *L.W. v. Grubbs*, 92 F.3d 894, 898–900 (9th Cir. 1996)). "When assessing non-detainee failure-to-protect claims, we apply a purely subjective deliberate indifference test." *Murguia*, 61 F.4th at 1111 (citing *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021)). "The state actor must 'recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Patel*, 648 F.3d at 974 (citing *Grubbs*, 92 F.3d at 899). "In other words, the state actor must 'know[ ] that

16

something *is* going to happen but ignore[ ] the risk and expose[ ] [the plaintiff] to it.'" *Murguia*, 61 F.4th at 1111 (citing *Grubbs*, 92 F.3d at 900); *see also Herrera¸*18 F.4th at 1162 (finding plaintiff failed to proffer facts defendant subjectively recognized child could drown in pool as defendant believed child was still in the locker room and three lifeguards were responsible for student safety in the pool).

The Court finds Plaintiffs' failure to respond to Defendants' arguments concerning deliberate indifference means Plaintiffs concede the issue of deliberate indifference. *See Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) (finding district court did not err in granting motion to dismiss harassment and retaliation claims where party failed to respond to the argument those claims were time-barred in its opposition to the motion to dismiss); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *see also Kroeger v. Vertex Aerospace LLC*, Case No. CV 20-3030-JFW(AGRx), 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases).

But even if Plaintiffs had responded, the Court cannot conclude that Doe Employees and Doe Officers acted with subjective deliberate indifference.  Plaintiffs allege Doe Employees and Doe Officers were actually or constructively aware of several prior incidents of domestic abuse by Chambers against Connie. (*See* Doc. 1 ¶¶ 60–63.) Plaintiffs allege Doe Employees and Doe Officers were actually or constructively aware Chambers did not live with Connie. (*See id.* ¶ 62.)  And Plaintiffs allege Doe Employees and Doe Officers were actually or constructively aware of Chambers' criminal record and that a judge ordered him to stay away from Connie as a probation condition.  (*Id.* ¶ 64.) Additionally, it can reasonably be inferred that Doe Employees and Doe Officers were aware of the calls from concerned neighbors, including two reports concerning a man breaking into Connie's apartment by breaking a sliding glass door, and a neighbor hearing a physical fight and their belief the man was going to kill Connie. (*See id.* ¶¶ 41–46.)

Armed with this knowledge, Doe Employees upgraded the call to a high priority and dispatched officers. (*See id.* ¶¶ 6–7, 47.) Thus, it cannot be said that Doe Employees disregarded a known or obvious risk to Connie.

It is reasonable to infer that Doe Officers were aware of this same information. However, a neighbor also told at least one Doe Officer that Connie was home, a man broke into her apartment, and showed the Doe Officer broken glass. (*See id.* ¶ 51.) That neighbor informed the Doe Officer she had seen Chambers assault Connie on previous occasions. (*Id.* ¶ 52.) The Court reasonably infers Doe Officers were aware of this information as well. Yet they did not sit idly by. Doe Officers arrived with guns drawn, knocked on Connie's door, and called out on a microphone for individuals to come out of the apartment. (*See id.* ¶ 48.) Doe Officers waited outside Connie's apartment for approximately 15 minutes before leaving. (*Id.* ¶ 53.) While Doe Officers' decision not to enter Connie's apartment under the circumstances is highly questionable, it cannot be said that their actions convey that they "actually intend[ed] to expose [Connie] to such risks without regard to the consequences to the [Connie]." *Patel*, 648 F.3d at 974 (citing *Grubbs*, 92 F.3d at 899).

### 2. Official Policy or Custom

Defendants argue Plaintiffs fail to identify any specific custom or practice and fail to show that it was the moving force behind a constitutional violation. (Doc. 7-1 at 15.) Defendants argue Plaintiffs cannot establish a custom because they fail to allege any other instances beyond the SDPD's failing to meet its stated goal for response times. (*Id.* at 16.) Defendants argue Plaintiffs allege no facts that Chief Nisleit made a decision that violated their rights or that such action was taken in his role as a final policymaker. (*Id.*) Defendants argue that, even if there is a policy of delayed arrival, neither the City nor Chief Nisleit condone it, they took actions to improve it, and Plaintiffs cannot establish the policy was adhered to with deliberate indifference. (*Id.* at 16–17.) Defendants also argue Plaintiffs fail to explain how a policy of failing to respond in a timely manner was the moving force behind a constitutional violation. (*Id.* at 17.)

18

A policy is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  The only policy Plaintiffs specifically discuss is the SDPD's Communications Division Priority System's policy that priority one calls should be dispatched immediately.  (*See* Doc. 1 ¶ 66.) However, Plaintiffs do not take issue with that policy, but rather whether it was followed. Thus, Plaintiffs' claim concerns an alleged unconstitutional custom, not an unconstitutional policy.

A custom is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990).  "Proof of random acts or isolated events is insufficient to establish custom." *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (quoting *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995)).  Rather, "[l]iability for improper custom … must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  The Ninth Circuit has explained that "[w]hile one or two incidents are insufficient to establish a custom or policy, we have not established what number of similar incidents would be sufficient to constitute a custom or policy." *Oyenik*, 696 F. App'x at 794 (citing *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989) (one prior instance of unconstitutional conduct insufficient for custom) and *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (same)).  Some district courts have concluded that "more [than two] incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality." *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019) (quoting *Cnty. of Stanislaus*, 2018 WL 5879725, at *5)).

19

1    Plaintiffs allege that, for the past five years, SDPD has failed to meet its public safety

2    standards and key performance indicators for priority one calls.  (Doc. 1 ¶ 68.)  In 2022,

3    SDPD and the City's average response time target for priority one calls was 14 minutes,

4    but the actual average response time was 36.8 minutes.  (*Id.* ¶ 69.)  Defendant Chief Nisleit

5    acknowledged SDPD deficiencies in a memorandum issues two months after Connie's

6    murder.  (*Id.* ¶ 70.)

7    Not only do Plaintiffs fail to state a constitutional claim in this case, they also do not

8    point to prior instances of *constitutional violations* to support their *Monell* custom claim

9    concerning Defendants' delayed response time to priority one calls.  *See Oyenik*, 696 F.

10   App'x at 794.  Nor do Plaintiffs explain how Defendants' delayed response time was a

11   moving force behind Connie's death.  *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178,

12   1190 (9th Cir. 2006) ("The plaintiff's burden is to establish 'that the injury would have

13   been avoided' had proper policies been implemented.") (citing *Gibson v. Cnty. of Washoe*,

14   290 F.3d 1175, 1196 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los*

15   *Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

16   **3.  Failure to Train**

17   Defendants argue that Plaintiffs' failure to train allegations are vague and conclusory

18   and do not identify any specific training program, deficiencies in such a program, a pattern

19   of similar violations, nor a constitutional violation attributable to a lack of training.  (*Id.* at

20   17–18.)  Plaintiffs do not respond to Defendants' argument.

21   A failure to train or inadequacy of training "may serve as the basis for § 1983 liability

22   only where the failure to train amounts to deliberate indifference to the rights of persons"

23   with whom the municipal employees come into contact.  *City of Canton v. Harris*, 489 U.S.

24   378, 388 (1989).  The question is "whether that training program is adequate; and if it is

25   not, the question becomes whether such inadequate training can justifiably be said to

26   represent [municipal] policy."  *Id.* at 390.  There may be situations where "in light of the

27   duties assigned to specific officers or employees the need for more or different training is

28   so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

20

that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.*  In such situations, "the failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which the [municipality] may be held liable if it actually causes injury." *Id.*  Put another way, a failure to train can be shown where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1186 (citing *Brown*, 520 U.S. at 409).

In non-obvious cases, there must be proof the program inadequacies "resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985). "If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Brown*, 520 U.S. at 407.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Brown*, 520 U.S. at 409).  There must also be an "affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823.  In other words, the deficiency in the program "must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391.  The plaintiff must show the constitutional injury would have been avoided if the municipal entity properly trained its employees. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

The Court finds Plaintiffs' failure to respond to Defendants' argument concerning failure to train means Plaintiffs concede this issue.  *See Allen*, 475 F. App'x at 159.  In any event, Plaintiffs' Complaint has two paragraphs addressing a potential failure to train (*see* Doc. 1 ¶¶ 71, 72), but Plaintiffs do not identify any specific training program, a lack thereof, or a deficiency in any such program.  Thus, Plaintiffs' failure to train allegations are

21

conclusory and they have not stated a failure to train claim.

For the foregoing reasons, The Court **GRANTS** Defendants' Motion with respect to Plaintiffs' *Monell* claim (First Cause of Action) and Fourteenth Amendment substantive due process claims (Second and Third Causes of Action).

**B. Negligence Claim (Fourth Cause of Action)**

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (citations omitted). Defendants argue that Doe Employees and Doe Officers had no duty to protect Connie under California law as there was no special relationship between them and Connie. (Doc. 7-1 at 18–21.) Plaintiffs do not respond to Defendants' argument.

"As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." *Williams v. State of California*, 34 Cal. 3d 18, 23 (1983). "A law enforcement officer's duty to protect the citizenry is a general duty owed to the public as a whole. … Thus, absent a special relationship creating a special duty, the victim of a crime that the police might have prevented cannot recover." *Von Batsch v. Am. Dist. Tel. Co.*, 175 Cal. App. 3d 1111, 1121–22 (1985). "The breach of duty may be an affirmative act which places the person in peril or increases the risk of harm." *Williams*, 34 Cal.3d at 24. A breach of duty may also occur "if an officer voluntarily assumes a duty to provide a particular level of protection, and then fails to do so." *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1129 (2002). Or a breach of duty may occur if police "took affirmative steps to aid the individual and by the acts lulled the individual into a false sense of security." *M.B. v. City of San Diego*, 233 Cal. App. 3d 699, 705 (1991) (citing *Mann v. State of California*, 70 Cal. App. 3d 773 (1977)).

"Recovery has been denied, however, for injuries caused by the failure of police

22

personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection." *Williams*, 34 Cal. 3d at 25; *see also Minch v. Dep't of California Highway Patrol*, 140 Cal. App. 4th 895, 905 (2006) ("[I]t is not enough to assert that the law enforcement officers took control of the situation."); *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 279 (1998) ("A long line of cases have held that a special relationship with a person in peril is not established simply because police officers responded to a call for assistance and took some action at the scene."); *Lopez v. City of San Diego*, 190 Cal. App. 3d 678, 681–82 (1987) (finding plaintiffs' allegations insufficient where police arrived on scene of shooting and delayed operation for over an hour to neutralize shooter and rescue victims); *Hartzler v. City of San Jose*, 46 Cal. App. 3d 6, 10 (1975) (finding appellants failed to plead sufficient facts to support a special relationship despite police's responding to 20 of appellant's calls about her husband and arresting him on one prior occasion). "In most instances, these general rules bar recovery when plaintiffs, having suffered injury from third parties who were engaged in criminal activities, claim that their injuries could have been prevented by timely assistance from a law enforcement officer." *Zelig*, 27 Cal. 4th at 1129 (citations omitted). "And the circumstance that an officer may have offered special protection on one occasion does not, by itself, give rise to a continuing special relationship and duty at a later date—or with other officers." *Id.* at 1129–30 (citation omitted).

The Court finds Plaintiffs' failure to respond to Defendants' arguments concerning negligence means Plaintiffs concede these issues. *See Allen*, 475 F. App'x at 159. In any event, as explained *supra* at III.B.1.i., Plaintiffs have not sufficiently alleged that Doe Employees or Doe Officers engaged in affirmative acts that increased the danger posed to Connie. Plaintiffs have also failed to allege that Doe Employees or Doe Officers made a specific promise to provide Connie a particular level of protection on this occasion or lulled Connie into a false sense of security. *See Zelig*, 27 Cal. 4th at 1129; *M.B.*, 233 Cal. App. 3d at 705 (1991). In fact, neither Doe Employees nor Doe Officers interacted with Connie

during the incident.  Thus, the Court finds Doe Employees nor Doe Officers did not have a special relationship with Connie and thus had no duty to aid Connie.  Accordingly, the Court **GRANTS** Defendants' Motion with respect to Plaintiffs' negligence claim.  The Court therefore need not address the parties' remaining arguments on the negligence claim.

### C. Bane Act (Fifth Cause of Action)

Defendants argue that Plaintiffs' Bane Act claim fails because (1) Plaintiffs' Fourteenth Amendment claims fail; (2) they did not allege facts to support any threats, intimidation, or coercion; and (3) they did not allege any specific intent to violate Connie's rights.  (Doc. 7-1 at 23–24.)  Plaintiffs respond that the specific intent requirement can be met by showing a reckless disregard.  (Doc. 8 at 9.)

To state a Bane Act claim, a plaintiff must sufficiently allege (1) a constitutional violation and (2) a specific intent to violate the plaintiff's rights.  *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 798–801 (2017)).  "[I]t is not necessary for the defendants to have been "thinking in constitutional or *legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."  *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

For the reasons discussed *supra* at III.B.1, Plaintiffs failed to sufficiently allege a constitutional claim.  But even if Plaintiffs had stated a constitutional claim, they fail to allege how Defendants engaged in conduct evincing a reckless disregard for Connie's constitutional rights.  *See Reese*, 888 F.3d at 1045.  Thus, the Court **GRANTS** Defendants' Motion with respect to Plaintiffs' Bane Act claim.

### D. State Law Immunity

Defendants argue they are entitled to immunity from Plaintiffs' state law claims under California Government Code §§ 820.20, 845, and 846.  (Doc. 7-1 at 24–27.)

Under California Government Code § 820.20, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission

where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." However, § 820.2 "applies only to policy decisions, not to operational decisions." *Mendez v. City of Los Angeles*, 897 F.3d 1067, 1084 (9th Cir. 2018). None of the alleged actions underlying Plaintiffs' negligence nor Bane Act claims (and by virtue Fourteenth Amendment claims) concern policy decisions.

Under California Government Code § 845, "[n]either a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." § 845 "was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation." *Mann*, 70. Cal. App. 3d at 778. It "was not intended to provide immunity against a particular police officer's negligence in the performance of his duty in a particular situation." *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 1402 (1993). Because Plaintiffs' claims concern the alleged negligence or recklessness of Doe Employees and Doe Officers during this particular incident, § 845 is inapplicable.

Under California Government Code § 846, "[n]either a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." Plaintiffs do not allege Defendants were negligent due to failing to arrest Chambers. Thus, § 846 is inapplicable here.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss in its entirety **with leave to amend**. Plaintiffs may file a first amended complaint on or before **July 12, 2024**.

**IT IS SO ORDERED.**

DATE:  June 24, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE